THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BEACHER NICHOLS, Defendant-Appellant.

Second District No. 80-47

Opinion filed May 12, 1981.

Mary Robinson, Elizabeth Clarke, and John J. Barrett, all of State Appellate Defender's Office, of Elgin, for appellant.

James S. Williams, State's Attorney, of Mt. Carroll (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant was convicted of the offense of murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(2)) based on his negotiated plea of guilty. Under the terms of the plea bargain the State agreed to dismiss count I of the amended information which charged murder with "the intent to kill or do great bodily harm" (par. 9—1(a)(1)), agreeing to charge the offense under count II with the intent language, "knows that such acts create a strong probability of death or great bodily harm * * *". (Par. 9—1(a)(2).) The State also agreed that it would not treat the case as a capital case nor seek to have a sentence of natural life imposed, and further indicated that it would not make a recommendation on the sentence to be imposed but would be limited to giving evidence in aggravation and mitigation without comment. The defendant was thereafter sentenced to 39 years imprisonment. He moved to withdraw his plea, which was denied. From the denial, he appeals.

The defendant claims that he should have been allowed to withdraw his plea because, as an inducement to his plea, he was led to believe that a death sentence was possible but that, because none of the aggravating factors listed in the Criminal Code were present (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)), the death penalty was not actually a viable sentencing alternative. As an alternative basis for withdrawing his plea he states he has defenses worthy of consideration by a jury either in that he was in an intoxicated, drugged condition sufficient to negate the existence of a necessary mental state or that he was insane.

██ The basic statement of policy governing withdrawal of guilty pleas is that if the plea is entered on a misapprehension "of the facts or of the law" or in consequence of misrepresentation by the State's Attorney "or someone else in authority," where there is doubt of the guilt of the accused or where he has "a defense worthy of consideration by a jury" or, generally, where justice would be "better served by submitting the case to a jury," the court should permit the withdrawal of a plea of guilty. (*People*

*v. Morreale* (1952), 412 Ill. 528, 531-32.) The decision, however, rests within the sound discretion of the trial court, to be granted not as a right but rather as necessary to correct manifest injustice; the defendant bears the burden of proof. *People v. Linden* (1975), 27 Ill. App. 3d 45, 48.

The defendant principally argues that the admonishment by the court that the maximum penalty for defendant's crime could be death amounted to both a misrepresentation of the law and a misrepresentation by one in authority. In essence he argues that a death sentence would have been possible only if one of the aggravating factors listed in section 9—1(b) of the Criminal Code were present; that the only aggravating factor which could under any view of the evidence be considered is that the murder was committed in the course of a listed felony, in this case rape or deviate sexual assault (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(6)), but that there was no evidence of this in the record.

■■ It is significant that the admonishment by the trial judge pursuant to Supreme Court Rule 402 (Ill. Rev. Stat. 1979, ch. 110A, par. 402) followed immediately after the court had been advised by both counsel in the presence of the defendant that a plea agreement would be submitted for approval. At this time no sentencing recommendation had been made, and no evidence in aggravation or mitigation presented. (See *People v. McCullough* (1970), 45 Ill. 2d 305, 309.) The admonishment was complete and included the statement that the offense of murder carries the *possible* penalties of a minimum of 20 years and a maximum of 40 years jail sentence, mandatory life imprisonment or death. The Illinois Supreme Court has noted that "there is only one offense of murder in Illinois; no distinction is made between capital and non-capital murder." (*People v. Brownell* (1980), 79 Ill. 2d 508, 524.) The death penalty is the maximum penalty for the crime of murder. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b).) The court is required by Rule 402 to inform the defendant of the "minimum and maximum sentence prescribed by law." (Ill. Rev. Stat. 1979, ch. 110A, par. 402(a)(2).) Thus, the court must inform of the death penalty even if the prosecutor has not requested a death penalty hearing, or the State is precluded from seeking the death penalty if the defendant later withdraws his guilty plea. (See *People v. Walker* (1981), 84 Ill. 2d 512.) Therefore we conclude that defendant was properly informed of the possibility of receiving the death sentence.

The Illinois Supreme Court has rejected the argument that informing the defendant of the possible maximum sentence coerced him into pleading guilty where the defendant actually received less than the statutory maximum. (See *People v. Chatman* (1974), 56 Ill. 2d 233, 236-37; *People v. McCullough* (1970), 45 Ill. 2d 305, 309. See also, *People v. Ehrler* (1972), 8 Ill. App. 3d 912.) In *Ehrler*, defendant was convicted of murder and sentenced to prison, appealed, and we reversed the conviction and

remanded for a new trial. The defendant then entered plea negotiations with the State in which he agreed to plead guilty and the State agreed to recommend a 16-40 year sentence, which the court ultimately accepted. In accepting the plea, the court informed defendant that the maximum sentence was death. In a second appeal the defendant maintained that since he originally had been sentenced to prison the death penalty in his case was "a practical impossibility" and therefore that he should not have been admonished about it. While we conceded that there was no real chance of the death penalty being imposed, we concluded that since death is the maximum penalty under the murder statute the defendant was properly informed of this possibility. In this case, where the admonishment was given at a time when there was no sentencing recommendation or evidence in aggravation or mitigation before the court, the judge properly admonished defendant as to the full range of possible penalties for the crime of murder.

■■ It should also be noted that defendant does not allege in his affidavit in support of his motion to withdraw that he feared the death penalty and was induced by that fear to plead guilty. At the time his counsel chose merely to rely on the theory that the court mistakenly told him that death was a possibility. In this court, counsel has argued that by implication the defendant must have been influenced by the possibility of his sentence. However, an allegation of fear of a possible death penalty is not sufficient to invalidate an otherwise knowing and intelligent guilty plea if the plea has been discussed with competent privately retained counsel. *People v. Scott* (1971), 49 Ill. 2d 231, 233.

Even misstatements of the law do not always entitle defendant to a withdrawal of his plea. In *People v. Goodwin* (1971), 50 Ill. 2d 99, the defense counsel and the court both erroneously indicated to the defendant that he could be sentenced to death if he went to trial but not if he pleaded guilty. Defendant argued that his plea was involuntary because these admonishments caused him to plead guilty to avoid death. The court quoted from the United States Supreme Court as the basis of its analysis:

> "The issue of the validity of a guilty plea was recently discussed in *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, wherein the court stated, 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. (Citations.) That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage.' (400 U.S. 25, at 31, 27 L. Ed. 2d 162, at 168; see also *People v.*

*Scott*, 49 Ill.2d 231, and cases therein cited.) In the instant case, the defendant pleaded guilty pursuant to his counsel's advice which was based on the overwhelming evidence against the defendant. The record indicates that defendant admitted that no coercion had precipitated his plea. Moreover, the trial judge did not impose the death penalty. Therefore we hold that the trial court's mistaken explanation to the defendant as to the possible sentences which could be imposed did not substantially prejudice defendant so as to deny him his constitutional rights." (50 Ill. 2d 99, 102-03.)

Here, also, defendant has not argued that he was coerced into his plea; his trial counsel was privately retained and has been found to be competent in the post-trial hearing, which finding is not challenged; the trial judge did not impose the death penalty, and there was overwhelming evidence against the defendant.

Defendant's motion to withdraw his plea indicated that both an intoxication and insanity defense would be available at trial if he were permitted to withdraw his plea. Neither defense has a substantial basis in the record and each was properly rejected by the trial judge.

Based on the factual material available in the record which included the confession of the defendant, the testimony of various witnesses and sworn statements to police, we are afforded a brief scenario of the crime. The body of Stephanie Saidel was found in a ditch by the side of a country road, partially covered with grass and weeds. When the body was found, her blouse had been pulled off her shoulders so that her breasts were exposed and her pants were pulled down near her ankles. She showed the visible effects of a severe beating. The autopsy confirmed the fact that the victim died from injuries received by being beaten and kicked about the head and body.

The victim and the defendant arrived separately at a party at a farmhouse. During the course of the evening they were seen together several times and they were seen kissing. A partygoer would testify that defendant stated that the victim "looked good to him" and that he "would like to stick it to her." Statements by other partygoers indicated that Stephanie kissed other men too. After 1 a.m. defendant and Stephanie were seen walking down the road together, and Stephanie was not seen thereafter until her body was found.

Testing showed that a pubic hair found among debris of the victim's body was similar to defendant's. No seminal fluid was found in any of the victim's body cavities.

In his statement defendant said he and the victim walked down the road from the party and began kissing; that they fondled each other; that the victim then asked defendant to "eat her out," at which point he became incensed and began hitting her. He said the victim kept saying

"OK we can do anything you want," but he just kept hitting her. When he stopped he checked her breathing and discovered she was dead. He pushed her further into the ditch and threw some grass on her. He said he had taken 50 pills of "speed" at the party.

■■■ The trial court specifically considered and ruled against the defendant on the voluntary intoxication defense and affirmed that ruling at the post-trial hearing. He properly did so. Voluntary intoxication must be "so extreme as to entirely suspend the power of reason; the accused must be incapable of acting knowingly or intentionally." (*People v. Mikel* (1979), 73 Ill. App. 3d 21, 26.) Where the evidence on the record indicates that defendant acted with any purpose or rationality or remembered the offense with clarity or detail, voluntary intoxication is not an available defense. (*People v. Walcher* (1969), 42 Ill. 2d 159, 163; *People v. Long* (1975), 30 Ill. App. 3d 815, 819.) Here, defendant remembers clearly his actions that night, and remembers the victim asking him to stop. He checked the body when he finally did stop to see if the victim was alive and attempted to conceal the body. On these facts the trial court's determination that voluntary intoxication was not available must be affirmed.

■■ Defendant did not meet his burden of proof on this issue by merely offering the affidavit of a doctor to the effect that a combination of amphetamines and alcohol in the amounts defendant allegedly consumed would render an individual incapable of appreciating the nature of his acts. The affidavit does not address itself to the voluntary intoxication standard and does not indicate defendant would have been incapable of acting knowingly. In any event the trial court was not required to accept the opinion of an expert when contradicted by factual testimony. *People v. Huggy* (1974), 19 Ill. App. 3d 247, 253.

The only allegations in support of the insanity defense are that the defendant asked his attorney to have him examined by a psychiatrist but that his attorney informed him that the insanity defense would be of no avail. There are no facts in the record to indicate that defendant has a valid insanity defense. The pre-hearing report indicated that defendant has been referred several times by the court and probation people to a mental health center and that there was no diagnosis of mental illness nor any long-term treatment prescribed. No information was added at the post-trial stage to indicate defendant was insane. We conclude that the trial court also properly refused to admit the withdrawal of a plea on the ground that there was an insanity defense.

We therefore affirm the judgment.

Affirmed.

VAN DEUSEN and HOPF, JJ., concur.