THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARTIN KRAUS, a/k/a Gary Russell, Defendant-Appellant.

Second District   No. 82—481

Opinion filed March 27, 1984.—Rehearing denied April 27, 1984.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Eugene Stockton, State's Attorney, of Dixon (Phyllis J. Perko, Gene Armentrout, and Martin P. Moltz, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Martin Kraus, appeals from the denial of his motion to withdraw his guilty plea, which was entered on the charge of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(2)) in the circuit court of Lee County. On appeal, he claims (1) that his guilty plea was the product of a misapprehension of the applicability of the death penalty in this case and that such misapprehension requires the vacatur of his guilty plea; and (2) that defendant's expressed desire to receive the death penalty raised a *bona fide* doubt of his fitness entitling him to a hearing on the question.

The issues raised on appeal are based upon the following events which occurred during defendant's arraignment on April 19, 1982. At the beginning of the hearing, defendant was advised that the charge of murder carried possible penalties of death, natural life, 20 to 40 years' imprisonment or the possibility of an 80-year maximum extended term, and the possibility of a mandatory supervised released term of three years. (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3(c)(1), 1005—8—1(a)(1), 1005—8—1(d), 1005—8—2(a)(1).) Defense counsel thereupon advised the court that defendant would plead not guilty, but defendant immediately responded, to the surprise of his attorney, that he would plead guilty to the charge. The following colloquy occurred:

"MR. FRITTS [defense counsel]: It's fine with me, Your Honor. I talked to him this morning. He gave me no indication of his plea for guilty. I do not have discovery from the State so I cannot give him a recommendation, but if he wishes to plead guilty—

THE COURT: That's your privilege. You have the right to do what you want to do. I would assume what your attorney's advising you is that you should wait until you have discovery, but on the other hand it's your decision to make. If you want to plead guilty, you can plead guilty. If you want to plead not guilty, you can plead not guilty. It's whatever you want to do.

THE DEFENDANT: Yes.

THE COURT: And you want to plead guilty?

THE DEFENDANT: Yes, I do, sir."

The court thereupon admonished defendant pursuant to Supreme Court Rule 402 (87 Ill. 2d R. 402). Defendant indicated he understood each of his rights. Defendant further indicated that his plea was voluntary.

The factual basis for the plea established that on March 25, 1982, Karen Plata was sitting in her car in the parking lot of Sauk Valley College waiting for her husband, Ysidro, to return from classes. At 7:30 p.m., defendant came out of one of the buildings, approached her car, opened the door and, displaying a knife, told her to move over. Defendant gave Mrs. Plata a slight push at which time she slid across the seat and attempted to exit the car. Ysidro Plata came out from the college to the car and, upon seeing defendant, pulled him from the car. A brief struggle ensued. The defendant lunged at Plata with a knife and Plata fell to the ground. The defendant ran away. Mr. Plata was declared dead at 7:30 the next morning; the cause of death was determined to be a wound to the left chest caused by a sharp instrument. Karen Plata also identified the defendant as the assailant in both a photographic and a physical lineup.

While noting that there were a few discrepancies in the facts, defendant nevertheless substantially agreed with the factual basis, stating, "I'm still staying with malice and aforethought. I premeditated to kill her husband." The court then asked defendant whether he had any further questions and the following discussion occurred:

"THE DEFENDANT: I have one, yes, if I may address the Court. If the State can prove premeditation in this case, what's the likelihood of the death sentence being passed?

THE COURT: Well, there's a number of factors that the State would have to prove before there could be a death sentence.

THE DEFENDANT: Would my testimony be enough?

THE COURT: It would have to be a heinous crime and that type of thing before there could be the death sentence. Do both you agree to that?

MR. FRITTS: I agree, Your Honor.

MR. STOCKTON [State's Attorney]: Or that the defendant previously had committed a murder.

THE COURT: Have you previously committed a murder?

THE DEFENDANT: No sir, but I have an extensive and long record of incarceration.

THE COURT: Well, of course, I don't know anything about that, but that wouldn't have anything to do as far as the death sentence is concerned I don't think.

THE DEFENDANT: Well, I want the death sentence. That's what I'm asking for. That's what I'm filing for.

THE COURT: What did you say?

THE DEFENDANT: I'm going to request that and through my testimony I think it can be proven that the crime was heinous and that it was committed with malice and it was premeditated.

THE COURT: Well, you understand when you plead guilty the Court now will set what we call a presentence investigation and hearing and a hearing then is set for aggravation and mitigation. At that time the State can present anything that it may have in aggravation and at the same time you have a perfect right to make a statement. You'll have a perfect right to testify if you want to, but there's nothing here particularly that the State has to prove. It's a question now you have pled guilty to this charge and the purpose of this hearing will be to give you an opportunity to make a statement, give you an opportunity to testify and the State can present whatever they want in aggravation and then the Court has to make a determination as to what the sentence should be. Do you understand that?

THE DEFENDANT: Yes sir.

* * *

THE COURT: But it's not a trial of your charge, you understand, when you plead guilty?

THE DEFENDANT: I freely admit my guilt."

On April 27, 1982, defendant filed a motion to withdraw his guilty plea, alleging: (1) that he was not guilty of the charge of murder; (2) that at the time of entering his plea he did not understand the difference between murder and manslaughter; (3) that he did not understand that a possible defense of intoxication existed to the charge; (4) that he was unable to fully understand his decision to plead guilty due to a communication problem with his attorney; (5) that he was unfit at the time of entering his plea; and, (6) that he was temporarily insane at the time of entering his plea. On April 28 defendant wrote to the court requesting a substitution of counsel because he and his defense counsel were "seemingly unable to communicate adequately." A hearing was conducted in which the court inquired whether defendant still wished the relief requested in the letter. Defendant responded that he was withdrawing his request for substitute counsel and was fully

satisfied with his representation. Regarding defendant's allegations of unfitness and temporary insanity at the time of entering his plea, the court stated that it saw no necessity for an insanity hearing since its review of the record and its own observations of the defendant indicated that defendant was "a very intelligent, competent, knowledgeable young man." The defendant then stated that at the time of his plea he had not been eating or sleeping and had been removed from drugs, and was "very depressed" as a result of these circumstances. The court denied a psychiatric examination but indicated that it would reconsider the question if the evidence at the hearing on the motion to withdraw the plea warranted it.

At the hearing on the motion to withdraw, defendant testified that he was intoxicated at the time of the offense and did not intentionally stab Plata but was responding to an attack upon him. He further reiterated the allegations in the motion and the fact that he was very depressed at the time of entering his plea. The court determined that defendant thoroughly understood the nature of the charge and had had the opportunity to consult with his attorney and indeed had been cooperating with his attorney. The court therefore found that defendant was fit at the time he entered his plea and that there was no basis for granting the motion to withdraw the guilty plea.

The cause proceeded to the hearing on aggravation and mitigation. During the hearing defendant gave a lengthy statement to the court in which he discussed the underlying facts of the offense, his involvement with drugs, and various alleged inaccuracies in the presentence report. Following defendant's statement, the State's Attorney advised the court that under these facts it was unclear whether defendant intended to commit any other felony at the time of the offense and, thus, the death penalty was inapplicable. He concluded that the maximum sentence for the charge would therefore be 40 years. The court reasserted its belief that defendant was competent and sentenced defendant to the maximum of 40 years' imprisonment. Defendant was advised of his right to appeal pursuant to Supreme Court Rule 605(b) (87 Ill. 2d R. 605(b)).

■ Defendant first claims that his guilty plea was involuntary because it was the product of a misapprehension of the applicability of the death penalty. He claims that the trial court's erroneous admonishment that the maximum penalty in the case would be death constituted a violation of Supreme Court Rule 402 (87 Ill. 2d R. 402), as well as a denial of due process. Finally, defendant suggests that his trial counsel was incompetent when he agreed with the trial court that the death penalty could apply if it were "a heinous crime or that

type of thing," and that the absence of communication between defendant and his attorney demonstrated that the plea was entered without the advice of counsel. We disagree with all these contentions.

Initially, we note that this issue is raised for the first time on appeal. Defendant's motion to withdraw his guilty plea argues six bases for vacating the plea. The motion did not mention that his plea was involuntary, nor that it was entered upon the belief that the death penalty was applicable when in fact it was not. Nevertheless, because of the unusual factual circumstances of this case and the gravity of the offense charged, we will review defendant's contentions pursuant to the authority vested in us by Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)).

■ We first consider defendant's contention that Supreme Court Rule 402 (87 Ill. 2d R. 402) was violated by the court's alleged erroneous admonishment that the maximum penalty would be death. This issue was resolved against the defendant in the recent case of *People v. Nichols* (1981), 96 Ill. App. 3d 354, 356, 420 N.E.2d 1166. In that case, we held that it was not error for the trial court to admonish a defendant in a murder case that the death penalty was a possible sentence, even though it was later determined that that penalty was not a viable sentencing alternative. We stated:

> "The Illinois Supreme Court has noted that 'there is only one offense of murder in Illinois; no distinction is made between capital and non-capital murder.' (*People v. Brownell* (1980), 79 Ill. 2d 508, 524.) The death penalty is the maximum penalty for the crime of murder. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b).) The court is required by Rule 402 to inform the defendant of the 'minimum and maximum sentence prescribed by law.' (Ill. Rev. Stat. 1979, ch. 110A, par. 402(a)(2).) Thus, the court must inform of the death penalty even if the prosecutor has not requested a death penalty hearing, or the State is precluded from seeking the death penalty if the defendant later withdraws his guilty plea." (96 Ill. App. 3d 354, 356, 420 N.E.2d 1166.)

The defendant in *Nichols* claimed to have entered his guilty plea in order to *avoid* the death penalty, which was later determined to be inapplicable because of the absence of aggravating circumstances under section 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)). While the defendant in the present case is claiming an opposite motivation, *i.e.*, that he entered his guilty plea in order to *receive* the death penalty, we nevertheless find the legal principles enunciated in *Nichols* to be equally applicable here. We therefore conclude that there was no error in the trial court's admonishment to

defendant that a possible sentence would be death.

■ We next consider whether this admonishment had a coercive effect upon the defendant so as to render his guilty plea involuntary. (See *People v. Nichols* (1981), 96 Ill. App. 3d 354, 356, 420 N.E.2d 1166.) It is well established that a guilty plea is not voluntary and intelligent if it is entered on the basis of a misapprehension of law or fact or a misrepresentation by defense counsel, the State's Attorney, or someone else in authority. (*People v. Turner* (1982), 111 Ill. App. 3d 358, 371, 443 N.E.2d 1167.) Where any of these circumstances are found to exist, the plea may be withdrawn; however, the defendant bears the burden of demonstrating any alleged misunderstanding or misrepresentation. (*People v. Nichols* (1981), 96 Ill. App. 3d 354, 355, 420 N.E.2d 1166; *People v. Turner* (1982), 111 Ill. App. 3d 358, 371, 443 N.E.2d 1167.) A misapprehension as to sentencing alternatives may render the guilty plea involuntary if the defendant was actually unaware of the possible punishment. (111 Ill. App. 3d 358, 371, 443 N.E.2d 1167; *People v. Weakley* (1970), 45 Ill. 2d 549, 553, 259 N.E.2d 802; *People v. Ballheimer* (1967), 37 Ill. 2d 24, 27, 224 N.E.2d 811.) However, where a defendant has been admonished thoroughly, a guilty plea is not revocable merely because the defendant subjectively believed that he or she would receive a certain sentence but did not. (*People v. Turner* (1982), 111 Ill. App. 3d 358, 372, 443 N.E.2d 1167; *People v. Cohn* (1980), 91 Ill. App. 3d 209, 214-15, 414 N.E.2d 543.) This is especially true where there is no reasonable justification for the defendant's mistaken subjective impression. (*People v. Turner* (1982), 111 Ill. App. 3d 358, 372, 443 N.E.2d 1167.) In all instances, however, the decision whether to allow a defendant to withdraw his plea of guilty rests within the discretion of the trial court, and will not be disturbed on appeal unless there is an abuse of discretion. (*People v. Ryan* (1979), 74 Ill. App. 3d 886, 890, 392 N.E.2d 1380.) We find no abuse of discretion here.

In *People v. Nichols* (1981), 96 Ill. App. 3d 354, 357, 420 N.E.2d 1166, we reiterated the general rule that an allegation of fear of a possible death penalty is not sufficient to invalidate an otherwise knowing and intelligent guilty plea if the plea has been discussed with competent legal counsel. (See *People v. Scott* (1971), 49 Ill. 2d 231, 233, 274 N.E.2d 39, and the cases cited therein; *North Carolina v. Alford* (1970), 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160.) We believe that an allegation of fear of a lengthy incarceration, which fear was admitted by this defendant at the sentencing hearing, offers even less reason to invalidate a knowing and intelligent plea than does a fear of death. Further, it is clear that any belief by defendant that he

would avoid such incarceration by pleading guilty was merely subjective and was not based upon any misrepresentations of the authorities or defense counsel. (See *People v. Turner* (1982), 111 Ill. App. 3d 358, 372, 443 N.E.2d 1167; *People v. Ryan* (1979), 74 Ill. App. 3d 886, 890, 392 N.E.2d 1380.) The record establishes that defendant was thoroughly admonished of his rights and the consequences of pleading guilty prior to entering his plea. He was aware of all the possible sentences for the charge of murder, including the one which he received, and he was advised that a sentence would not be determined until a later date. Further, defendant expressly stated that his plea was not induced by threats or promises. (*Cf. People v. Reher* (1978), 60 Ill. App. 3d 32, 376 N.E.2d 402; *People v. Gardner* (1974), 22 Ill. App. 3d 203, 317 N.E.2d 316; *People v. Riebe* (1968), 40 Ill. 2d 565, 241 N.E.2d 313.) Under all these circumstances, we think it is clear that defendant's guilty plea was not the product of any misrepresentation that would warrant the withdrawal of his plea.

■ The question remains as to whether defendant's guilty plea was entered with the advice of competent legal counsel. Defendant contends that he received ineffective assistance of counsel because counsel did not know the criteria for determining whether the death penalty was applicable and because there was an absence of communication between defendant and his counsel prior to and at the time of entering his plea. He contends this lack of communication was demonstrated by his counsel's surprise at defendant's decision to plead guilty, his counsel's subsequent statement that he had no recommendation, and defendant's letter advising the court of the alleged communication problem.

Without determining whether defense counsel's agreement with the trial court as to the circumstances under which the death penalty would apply constituted actual incompetence, we believe that defendant has failed to demonstrate that this agreement resulted in substantial prejudice without which the outcome of the proceeding would probably have been different. (*People v. Conley* (1983), 118 Ill. App. 3d 122, 127, 454 N.E.2d 1107.) The record indicates that defendant had the opportunity to discuss the case with his counsel prior to the plea and in fact did so, that he was aware that his attorney could not make a recommendation on the guilty plea at that time because he had not yet received discovery from the State, and that defendant was advised that he should wait until discovery was received before entering his plea. Under these circumstances, it is clear that defendant chose to plead guilty against the advice of his attorney and the admonition of the court. Further, even if counsel had known the crite-

ria for determining whether the death penalty was applicable, insufficient facts were available to him at the arraignment to make such a determination. Given the possibility that the murder here occurred while defendant was embarking upon the commission of another felony, *i.e.*, kidnaping, rape, *et cetera*, it cannot be said that defense counsel was incompetent in not realizing at the arraignment that the death sentence was inapplicable. (See Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6).) We also note that defendant's complaints regarding a lack of communication between defendant and defense counsel were withdrawn by defendant at a hearing on that matter. During the hearing, defendant stated that he was satisfied with the representation that he was receiving. Under all these circumstances, we conclude that defendant has failed to sustain his burden of demonstrating that his guilty plea was entered without the advice of competent legal counsel.

 Defendant next contends that his specific request for the death penalty *per se* raises a *bona fide* doubt of fitness entitling him to a hearing on the question.

A defendant will be considered competent to stand trial or plead guilty if he understands the nature of the charges against him and can assist in his defense. (*People v. Ryan* (1979), 74 Ill. App. 3d 886, 891, 392 N.E.2d 1380; *People v. Heral* (1976), 62 Ill. 2d 329, 336, 342 N.E.2d 34.) The decision whether a *bona fide* doubt of fitness is raised rests within the discretion of the trial court and should not be disturbed on appeal absent an abuse of that discretion. (*People v. Jones* (1982), 109 Ill. App. 3d 120, 128, 440 N.E.2d 261.) The reviewing court should give great weight to the trial court's determination, since that court has the opportunity to observe the defendant and evaluate his actions. *People v. Jones* (1982), 109 Ill. App. 3d 120, 128, 440 N.E.2d 261; *People v. Dominique* (1980), 86 Ill. App. 3d 794, 803, 408 N.E.2d 280.

The question presented here is apparently one of first impression in this State. However, case law has established that a mere history of psychological disturbances does not necessarily show incompetence. (*People v. Dominique* (1980), 86 Ill. App. 3d 794, 804, 408 N.E.2d 280; *People v. Heral* (1976), 62 Ill. 2d 329, 336, 342 N.E.2d 34.) The court here was aware that defendant was depressed and had not been sleeping or eating at the time of arraignment. Further, the court had before it three different psychological reports on defendant and a summary of yet another report. These reports dated from 1972 through 1977. While these reports indicated that defendant had emotional and personality disorders, as well as a drug dependency, one report also described defendant as having a "high level of measured intelligence,

a great deal of potential." The trial court was extremely impressed, as was this court, with defendant's command of the English language, and legal terms in particular, and his ability to communicate his thoughts to the court. Defendant was at all times responsive to the court's questions. (*People v. Jones* (1982), 109 Ill. App. 3d 120, 129, 440 N.E.2d 261.) There are no facts in the record which indicate that defendant did not have the ability to understand the charge against him or the proceedings, or to assist in his defense. There was no testimony or affidavit by defense counsel indicating that defendant was not able to cooperate with defense counsel. Further, defendant cites no incident in the record to show periods of incoherence or irrationality. Under these circumstances, we believe defendant's desire for the death penalty was merely a manifestation of his depressive state of mind at the time of arraignment, and did not *per se* raise a *bona fide* doubt of his fitness. *People v. Dominique* (1980), 86 Ill. App. 3d 794, 804, 408 N.E.2d 280; *People v. Heral* (1976), 62 Ill. 2d 329, 336, 342 N.E.2d 34.

Accordingly, the order of the circuit court of Lee County denying defendant's motion to withdraw his guilty plea is affirmed.

Affirmed.

VAN DEUSEN and REINHARD, JJ., concur.