**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190298-U

Order filed November 30, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Knox County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0298 Circuit No. 17-CF-519 |
| DEVONTAE D. WILLIAMS, | ) ) ) | Honorable Paul L. Mangieri, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Justice Schmidt concurred in the judgment.
Presiding Justice McDade dissented.

**ORDER**

¶ 1     *Held*:  The court did not err by denying defendant's amended motion to withdraw guilty plea.

¶ 2     Defendant, Devontae D. Williams, appeals following the Knox County circuit court's order denying his "Amended Motion to Reconsider Sentence or Vacate the Judgement [*sic*] and Allow Defendant to Withdraw Guilty Plea." Defendant argues that the court improperly denied his motion to withdraw guilty plea where defendant showed a misapprehension of the potential

sentencing range. Defendant more specifically contends that the 45-year agreed sentencing cap and imposed sentence are unconstitutional under *People v. Buffer*, 2019 IL 122327, ¶ 41. See also *People v. Holman*, 2017 IL 120655, ¶ 46. We affirm.

¶ 3                                                      I. BACKGROUND

¶ 4          On March 18, 2016, in case No. 16-CF-137, the State charged defendant by information with 10 charges[1] related to the March 16, 2016, shooting death of Dakota Tinkham. Specifically, the State charged defendant with four counts of murder, all Class X felonies; four counts of home invasion, all Class X felonies; one count of residential burglary, a Class 1 Felony; and one count of possession of a stolen firearm, a Class 2 felony. Several of the home invasion charges alleged that defendant discharged a firearm in the commission of those offenses. At the time, defendant was 17 years old. The court appointed counsel to represent defendant.

¶ 5          On October 16, 2017, pursuant to a partially negotiated plea agreement, the State dismissed the charges in case No. 16-CF-137 and filed a one-count information that charged defendant with first degree murder (720 ILCS 5/9-1(a)(3) (West 2016)) in case No. 17-CF-519. The information alleged that on March 16, 2016, defendant, "without lawful justification and while committing a forcible felony, Residential Burglary, in violation of 720 ILCS 5/19-3, said defendant struck Dakota Tinkham with a blunt object, thereby causing the death of Dakota Tinkham." The charging instrument made no reference to a firearm. In addition to the dismissed charges, the State agreed to cap its sentence request to 45 years' imprisonment.

¶ 6          Before accepting defendant's plea, the court inquired whether defendant understood that the State was going to recommend that the court sentence defendant to 45 years' imprisonment,

---

[1]The charging instrument for case No. 16-CF-137 is not part of the record in this appeal. However, a "Rap Sheet" in the record provides the name, class, and statutory cite for each charge.

and as currently charged, defendant faced a potential sentencing range of 20 to 60 years' imprisonment. Defendant indicated that he understood the sentence cap attendant to the plea agreement and the sentencing range applicable to the first degree murder charge.

¶ 7        The State's factual basis established that on March 16, 2016, defendant, along with several other individuals, entered Tinkham's residence. While inside, the individuals took several items belonging to Tinkham. After leaving the residence, the group met at another location and created a plan to return to Tinkham's residence to take more items. Defendant, Miguel Romo, Jovendia Williams, and Justin Timmons, returned to Tinkham's residence to steal additional items. Upon entering Tinkham's residence, a struggle ensued, and Tinkham was struck in the head with a blunt object that caused Tinkham's death.

¶ 8        After hearing the State's factual basis, defendant indicated that he still wished to plead guilty. The court accepted defendant's guilty plea.

¶ 9        At the February 26, 2018, sentencing hearing, Tinkham's parents, Greg Hutton and Jessica Yocum, gave victim impact statements on behalf of the prosecution. Hutton told the court that his only son, Tinkham, was 19 years old when he died. Tinkham had graduated from high school, started a new job, and lived on his own. Tinkham was doing well and had goals that he was determined to reach. Hutton spoke of the affect Tinkham's death had on him, and stated,

> "[the] pain of not seeing [Tinkham] or not being able to talk to him or watch him become the man he wanted to be, it hurts beyond words.
>
> Every day is a challenge to get through. [Tinkham] *** was a one-of-a-kind kid. His smile and the way he made everyone laugh with his smart-alec attitude.

* * *

3

As you can tell, we all loved [Tinkham], and if this hadn't happened, he would still be here. His time with us was cut short. Our lives have been shattered. We each have an emptiness we have to live with every day."

¶ 10     Yocum told the court

"I loved [Tinkham] with all my heart—and my kids with all of my heart, but [Tinkham] was my buddy and my best friend, *** you'll never know *** how that bond means to a parent. *** I hope you realize how much you hurt and have taken from me forever.

*     *     *

*** [T]o lose a happy, healthy young man suddenly, it tears your world apart, and to find out seven people did this to [Tinkham] over some electronics and some weed when *** you could have just fought him with hands, hurt him and left. He would have given anything in that house to still be here.

I get nothing with my son anymore. No holidays, no wedding, grandkids, no more hugs, and the thing I want most is to hear him tell me he loves me. I don't wish this hurt on anybody, but I wish you could feel half of my hurt.

*     *     *

*** You're alive and still get to talk to the people you love, and all we get is our memories of [Tinkham], our pictures, our stories, and a graveside to sit and cry by. And remember my handsome, loving son ***."

¶ 11     The court noted that before defendant pled guilty, he faced "multiple charges that included murder with a mandatory 25-year firearm enhancement." The court explained that defendant previously faced a minimum sentence of 20 years' imprisonment plus the 25-year

4

firearm enhancement for an effective minimum sentence of 45 years' imprisonment. After defendant agreed to cooperate in the prosecution of Romo, the State "agreed to amend the original charges and presented a factual basis that [Tinkham] was killed as a result of being struck with a blunt object rather than shot with a firearm. Thus, removing the mandatory 25-year enhancement."

¶ 12 In mitigation, the court found, in part, that defendant exhibited a level of maturity appropriate for an individual of 17 years of age, defendant did not appear to be impetuous, defendant was kind and polite and able to conform his behavior to the requirements of law, defendant had the ability to consider the risks associated with his behavior, and defendant was subjected to peer pressure and negative influences. The court also noted, "defendant's potential for rehabilitation or evidence of rehabilitation is great." Later, the court said defendant's "potential for rehabilitation is quite high." The court also noted

> "[A]t the heart of the analysis and this Court's analysis in arriving at the sentence to be imposed in this case are the issues brought up by [defense counsel]. Because not only the U.S. Supreme Court, but the Illinois State Supreme Courts state that defendants under the age of 18 are entitled to close scrutiny whenever a sentence of imprisonment is to be handed down.
>
> ***
>
> 17-year-olds like the defendant are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure, and they have less control or less experience with control over their own environment. The character of a 17-year-old is not well formed as that of an older adult, and the personality traits of a 17-year-old are more transitory, less fixed, and taken

5

together, those differences mean that the irresponsible conduct of a 17-year-old may not be as morally reprehensible as that of an adult.

\*\*\*

However, as a sentencing Court, I believe this Court still cannot lose sight of the fact that regardless of the age of the defendant at the time of the commission of the offense, respectfully, [Tinkham] is just as dead. Regardless of whether the defendant was 17, and I've taken that into consideration, or 27, or 52, [Tinkham] is still just as dead."

The court sentenced defendant to 42 years' imprisonment. The court ordered defendant to pay $9066.69 in restitution.

¶ 13    On March 26, 2018, plea counsel filed a "Motion to Reconsider Sentence or Vacate the Judgement [*sic*] and Allow Defendant to Withdraw Guilty Plea." On July 3, 2018, plea counsel filed an "Amended Motion to Reconsider Sentence or Vacate the Judgement [*sic*] and Allow Defendant to Withdraw Guilty Plea" and attached an affidavit from defendant. The motion first asked the court to reconsider the sentence imposed. The motion contended that the imposed sentence was excessive and the court did not properly consider factors in mitigation. In the alternative, the motion asked the court to vacate the judgment and allow defendant to withdraw his guilty plea. Defendant averred that plea counsel was ineffective where counsel pressured defendant to accept the plea agreement. Further, defendant "failed to appreciate the consequences of his plea," because of defendant's "age and inexperience, he did not know what he was doing and felt that his attorney was not going to fight for him, so he pled guilty." In the supporting affidavit, defendant stated that he "didn't know nothing about the laws and what [defendant] should have did [*sic*]" and "didn't know anything about the time and what

[defendant] was facing." Following defendant's claim of ineffective assistance of plea counsel, the court appointed new counsel to represent defendant.

¶ 14    On April 11, 2019, the court held a hearing on defendant's amended motion. Defendant testified that plea counsel informed him prior to his plea that defendant faced a sentencing range of 80 years to life imprisonment. Defendant also stated that at his arraignment for case No. 16-CF-137, plea counsel informed defendant that his sentencing range was 20 to 45 years' imprisonment.[2] Additionally, while defendant acknowledged his numerous admissions to the charged offense, including testimony in codefendant Romo's trial, defendant claimed that he pled guilty to an offense that he did not commit.

¶ 15    Plea counsel testified that, at the beginning of the proceedings, defendant faced a minimum sentence of 45 years' imprisonment, which included a 25-year firearm enhancement. Plea counsel clarified that he told defendant that the firearm enhancement was discretionary for those who were minors at the time of the offense. Plea counsel denied informing defendant that he faced a minimum of 80 years' imprisonment.

¶ 16    The court denied defendant's amended motion. The court found that defendant failed to establish a misapprehension of the facts or the law attributable to plea counsel's ineffective assistance to warrant the granting of defendant's amended motion. Specifically, the court rejected defendant's assertions that his guilty plea was involuntarily and unknowingly made because defendant "failed to appreciate the consequences of his plea." The court noted that it properly admonished defendant regarding his guilty plea and defendant understood the proceedings against him and the terms of his plea agreement. Further, the court found

---

[2]The transcript of the arraignment hearing in case No. 16-CF-137 is not a part of the record on appeal.

defendant's testimony alleging that plea counsel misinformed defendant incredible and "unworthy of belief," and the court found plea counsel's testimony credible. When addressing defendant's claim that "[t]he court erred in imposing [defendant's] sentence," the court found that it properly considered the statutory factors in aggravation, mitigation, and *Miller* factors when it determined defendant's sentence. Moreover, it found that defendant's sentence fell "slightly above the mid-sentencing range" and was within the statutory range. For those reasons, the court concluded that it did not err when sentencing defendant. Finally, the court granted defendant's request to vacate the restitution previously ordered due to the length of defendant's sentence.

¶ 17                                    II. ANALYSIS

¶ 18        On appeal, defendant argues the court erred by denying his "Amended Motion to Reconsider Sentence or Vacate the Judgement [*sic*] and Allow Defendant to Withdraw Guilty Plea" because he entered the plea under a misapprehension of the juvenile sentencing law. Specifically, developments in juvenile sentencing law rendered the threatened sentence defendant pled guilty to avoid unrealistic and rendered the sentence that he received illegal. See *Buffer*, 2019 IL 122327, ¶ 41; *Holman*, 2017 IL 120655, ¶ 46. Defendant acknowledges that he forfeited review of this issue by failing to raise it in his postplea motion, but he contends the forfeiture was the result of ineffective assistance of postplea counsel.

¶ 19                             A. Sentence Reconsideration

¶ 20        Initially, we note that the circuit court indulged defendant's "Motion to Reconsider Sentence." However, defendant may only challenge his sentence through a motion to withdraw his guilty plea because the plea was partially negotiated, and defendant received a sentence within the negotiated range. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017); Ill. S. Ct. R. 605(c)(2)

8

(eff. Oct. 1, 2001); see *People v. Johnson*, 2019 IL 122956, ¶¶ 45, 57 (when a defendant enters into a negotiated plea in exchange for the State's agreement to sentencing concessions, defendant may not challenge the excessiveness of his sentence and his only recourse is to seek to withdraw his guilty plea). Defendant has sought to withdraw his guilty plea and therefore cannot raise an issue that the sentence he received, within the agreed sentencing range, was excessive. The issue of whether his sentence must be set aside as unconstitutional, based on *Buffer*, is addressed below.

¶ 21   Even if defendant could properly challenge his sentence in a motion to reconsider, defendant's sentence fell within the range of the plea agreement and the sentence he received was less than the agreed cap of 45 years' imprisonment. See *Johnson*, 2019 IL 122956, ¶ 45. Specifically, defendant faced a sentencing range of 20 to 60 years' imprisonment, and the court sentenced defendant to 42 years' imprisonment. See 730 ILCS 5/5-4.5-20(a) (West 2016). Therefore, any excessive sentence claims in defendant's postplea motion are without merit. Again, whether defendant's sentence was unlawful because it exceeded the 40-year term recognized as a *de facto* life sentence in *Buffer* is a separate issue discussed below.

¶ 22                              B. Plea Withdrawal

¶ 23   At the outset, we note that defendant does not and cannot directly challenge the propriety of his sentence under *Buffer*. So long as defendant's guilty plea was entered voluntarily, it "waives all nonjurisdictional errors or irregularities, including constitutional ones." *People v. Townsell*, 209 Ill. 2d 543, 545 (2004); see also *Brady v. United States*, 397 U.S. 742, 757 (1970) (a plea is not invalid because "the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions."). Instead, defendant contends that case law decided after the entry of his guilty plea rendered his plea involuntary. This argument is

9

complicated by postplea counsel's failure to raise the issue in the "Amended Motion to Reconsider Sentence or Vacate the Judgement [*sic*] and Allow Defendant to Withdraw Guilty Plea." Thus, we begin our analysis with a discussion of the ineffective assistance of postplea counsel standard.

¶ 24    A criminal defendant has a constitutional right to effective assistance of counsel at all stages of a criminal proceeding, including postplea proceedings. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Cabrales*, 325 Ill. App. 3d 1, 6 (2001). To establish a claim of ineffective assistance of postplea counsel, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A defendant must satisfy both prongs of the *Strickland* test. *People v. Shaw*, 186 Ill. 2d 301, 332 (1998).

¶ 25    A defendant has no absolute right to withdraw his guilty plea. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). To withdraw a guilty plea, a defendant must demonstrate that: (1) the plea was entered on a misapprehension of the facts or law, (2) his agreement to the plea was the result of misrepresentations by counsel, the State, or another authority, (3) he has a defense worthy of consideration by a jury, or (4) the ends of justice will be better served by submitting the case to a jury. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). "[T]he burden is on the defendant to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression." *Id.* The decision to grant or deny the motion to withdraw defendant's guilty plea lies with the circuit court and is reviewed for an abuse of discretion. *Delvillar*, 235 Ill. 2d at 519.

¶ 26        At the time of defendant's plea, *Miller v. Alabama*, 567 U.S. 460, 479 (2012), forbid the imposition of *mandatory* life sentences on a juvenile offender. A court could impose a discretionary life sentence on a juvenile offender only after the court considered the juvenile's youth and its attendant characteristics. *Id.* In *People v. Reyes*, 2016 IL 119271, ¶¶ 7, 8 (*per curiam*), our supreme court extended *Miller* to require courts to consider youth and its attendant characteristics before imposing a *de facto* life sentence. *Reyes* did not define what constituted a *de facto* life sentence. In *Holman*, 2017 IL 120655, ¶ 46, our supreme court further held that a juvenile offender may be sentenced to life imprisonment, "but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." This was the state of the juvenile sentencing law on October 16, 2017, when defendant entered his plea.

¶ 27        Nearly two years after defendant entered his guilty plea, our supreme court created a bright-line rule that a sentence greater than 40 years' imprisonment constitutes a *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 42 (opinion filed April 18, 2019). Prior to *Buffer*, at the time of defendant's plea, the exact parameters of a *de facto* life sentence were subject to the court's interpretation. Indeed, as indicated by the court's comments at sentencing, the court believed that it was imposing a sentence that comported with *Miller* and its progeny. *Supra* ¶ 12. Therefore, defendant cannot show that *Buffer*, a case decided well after the entry of defendant's guilty plea, caused him to misapprehend the sentence he faced before he entered his guilty plea. Further, defendant cannot show postplea counsel provided ineffective assistance for failing to raise this meritless issue. See, *e.g.*, *People v. Enoch*, 146 Ill. 2d 44, 53 (1991) (holding appellate counsel was not ineffective for failing to raise a meritless issue).

11

¶ 28 Even if *Buffer* were decided at the time of defendant's plea, it would not have changed the outcome, as defendant could still agree to and receive a sentence of more than 40 years so long as the court considered defendant's youth and its attendant circumstances. See *Reyes*, 2016 IL 119271, ¶¶ 7, 8. In fact, the court gave significant consideration to defendant's youth before it imposed the 42-year sentence. *Supra* ¶ 12.

¶ 29 Further, we find that the 45-year sentence cap that was attendant to defendant's plea was not *per se* unlawful or unconstitutional. First, the sentence was well within the range for the offense of first degree murder. See *supra* ¶ 21. Second, and contrary to defendant's argument, the 45-year sentence cap did not, by itself, violate the eighth amendment of the United States Constitution or proportionate penalties clause of the Illinois Constitution. In *Buffer*, 2019 IL 122327, ¶ 41, which was decided several years after defendant entered his guilty plea, the court did not expressly prohibit the negotiation of a plea cap above 40 years, as long as the sentencing court has discretion to impose a sentence of less than 40 years, after properly considering defendant's rehabilitative potential together with the unique characteristics resulting from the youthful age of defendant. Therefore, we conclude that the sentence cap of 45 years was not *per se* unconstitutional and would not provide grounds to withdraw the guilty plea based on this record.

¶ 30 Finally, the court's finding at sentencing that defendant possessed rehabilitative potential—a fact that would ordinarily preclude the imposition of a *de facto* life sentence—does not change our conclusion. At the time of his plea, defendant could not have known that the court would make such a finding. Facing a sentencing range of 45 years to life imprisonment, defendant made the reasonable decision to plead guilty and guarantee for himself a sentence of 45 years or less.

12

III. CONCLUSION

¶ 32 The judgment of the circuit court of Knox County is affirmed.

¶ 33 Affirmed.

¶ 34 PRESIDING JUSTICE McDADE dissenting:

¶ 35 Defendant has demonstrated that he entered his guilty plea while under a misapprehension of the law. Because defendant is therefore entitled to withdraw his plea, I must respectfully dissent.

¶ 36 As the majority correctly points out, a defendant may withdraw his guilty plea only in limited scenarios. *Supra* ¶ 25. Most relevant to the instant case, a defendant should be allowed to withdraw his plea where the plea was entered through a misapprehension of the facts or of the law. *People v. Hughes*, 2012 IL 112817, ¶ 32. "It is well established that a guilty plea is not voluntary and intelligent if it is entered on the basis of a misapprehension of law or fact[.]" *People v. Kraus*, 122 Ill. App. 3d 882, 888 (1984).

¶ 37 In arguing that he entered his plea under a misapprehension of the law, defendant invokes our supreme court's decision in *Buffer* frequently throughout his briefs. In *Buffer*, our supreme court held that a sentence of more than 40 years' imprisonment was a *de facto* life sentence, such that the trial court was obligated to (1) consider the *Miller* factors, and (2) find that the defendant is permanently incorrigible and beyond the possibility of rehabilitation before imposing such a sentence on a juvenile offender. *Buffer*, 2019 IL 122327, ¶ 40; *Holman*, 2017 IL 120655, ¶ 46. To the extent that defendant's argument for misapprehension of the law relies on *Buffer*, I agree with the majority in finding that it is unavailing. Defendant entered his guilty plea on October 16, 2017, more than 18 months before *Buffer* was decided. Defendant cannot claim to have misapprehended law that did not exist at the time of the plea. "[A] voluntary plea of guilty

13

intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady*, 397 U.S. at 757.

¶ 38    Nevertheless, the record in this case establishes that defendant did enter his plea on the basis of a misapprehension of the law. While the *Buffer* decision established a bright-line rule defining *de facto* life sentences, it did not announce any new legal principles with respect to *Miller*. The notion that a court was required to consider the *Miller* factors before imposing a discretionary *de facto* life sentence upon a juvenile offender was established by our supreme court *prior* to defendant's guilty plea in this case. *Reyes*, 2016 IL 119271, ¶ 9 (*de facto* life sentences); *Holman*, 2017 IL 120655, ¶ 40 (discretionary life sentences).

¶ 39    To be sure, at the time of defendant's plea, the precise limits of a *de facto* life sentence were ill-defined. *E.g.*, *Reyes*, 2016 IL 119271, ¶¶ 10, 13 (89-year term is *de facto* life sentence; 32-year term is not); *People v. Perez*, 2018 IL App (1st) 153629, ¶ 38 (53-year term not a *de facto* life sentence); *Buffer*, 2017 IL App (1st) 142931, ¶ 62 (50-year term is a *de facto* life sentence); *Bear Cloud v. Wyoming*, 2014 WY 113, ¶ 33 (45-year term is *de facto* life sentence; cited approvingly in *Reyes* and *Holman*). Defendant could not have known with any specific certainty what length of sentence would require the trial court to engage in consideration of the *Miller* factors.

¶ 40    Defendant could have known that there was *some* practical limit on the length of sentence the trial court could impose without first finding that the defendant was permanently incorrigible and beyond the possibility of rehabilitation. The existence of that practical limitation[3] would

---

[3]Even under *Miller*, of course, a trial court may sentence a juvenile offender to a life sentence, provided the court first considers the characteristics of youth and its attendant circumstances and finds that the juvenile is "beyond the possibility of rehabilitation." *Holman*, 2017 IL 120655, ¶ 46. A defendant contemplating a plea offer cannot begin to weigh whether he is susceptible to such a finding if he is wholly unaware that the requirement exists.

14

have been particularly relevant here, as defendant, absent a plea agreement, was facing the potential of life imprisonment. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2018) (providing sentence enhancement of up to natural life imprisonment where personal discharge of a firearm causes the death of another person). If the relative value of the State's plea offer is measured by the relief it affords in relation to the maximum sentence faced, it is paramount that a defendant be aware of the limitations on that maximum sentence. Regardless of whether a *de facto* life sentence was defined as 40, 50, or 60 years, defendant in this case should have been made aware that the trial court could not impose an actual life sentence without first finding him permanently incorrigible. Only if defendant knew the applicable law could he have considered the likelihood that the court would make such a finding, and, in turn, consider the actual value of the State's offer of 45 years' imprisonment.

¶ 41        The record suggests that defendant was not aware of the law regarding *de facto* life sentences at the time of his plea. Defendant's amended motion to withdraw his plea was filed by the same attorney who represented defendant throughout plea proceedings. It should not be held against defendant that counsel failed to detail his own shortcomings in that motion. *People v. Lawton*, 212 Ill. 2d 285, 296 (2004) ("An attorney cannot be expected to argue his own ineffectiveness."). More importantly, in a *pro se* affidavit attached to that motion, defendant did allege that he "didn't know nothing about the laws" and that "I really didn't know anything about the time and what I was facing I was just going off of what my Public Defender was telling me." Such allegations constitute a claim of misapprehension of the law in its most basic form. A *pro se* defendant cannot be expected to give a detailed analysis of the law where his unawareness of the law is at the very heart of the issue.

15

¶ 42    As an aside, the majority asserts that "[e]ven if *Buffer* were decided at the time of defendant's plea, it would not have changed the outcome, as defendant could still agree to and receive a sentence of more than 40 years so long as the court considered defendant's youth and its attendant circumstances." *Supra* ¶ 28. It is unquestionably true that a juvenile defendant may agree to a sentence of more than 40 years even after *Buffer*. But such a sentence would only be considered voluntary and intelligent if that defendant was aware of *Buffer* and its implications. If this hypothetical post-*Buffer* defendant later demonstrated—as defendant has in this case—that the plea was entered without knowledge of the relevant law, he would be allowed to withdraw that plea.

¶ 43    In sum, the record makes clear that defendant was not aware of *Miller* and its progeny, including *Reyes* and *Holman* at the time of his plea. This misapprehension of the law precluded defendant from a knowing consideration of the value of the State's plea offer and the effect of his plea. Thus, it also rendered defendant unable to intelligently plead guilty. See *Kraus*, 122 Ill. App. 3d at 888. Accordingly, I would remand the matter with instructions that the trial court allow defendant to withdraw his plea.