The People of the State of Illinois, Plaintiff-Appellee, *v.* Michael B. Quick, Defendant-Appellant.

(No. 74-29;

Fifth District—November 22, 1974.

Robert E. Farrell, of Mt. Vernon, and Lynn Sara Frackman, of Chicago, both of State Appellate Defender's Office, for appellant.

John H. Ward, State's Attorney, of Taylorville, for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Defendant, Michael B. Quick, was originally indicted for murder, but after protracted plea negotiations, this charge was dismissed and his plea of guilty to a complaint charging voluntary manslaughter was accepted by the Circuit Court of Christian County. Following the submission of a presentence report and an extensive hearing in aggravation and mitigation, the court imposed a sentence of 5 to 15 years in the penitentiary. The length of the sentence was not included in the plea negotiations. In this appeal defendant contends that the trial court erred in determining there was a factual basis for the plea contrary to Supreme Court Rule

402(c) (Ill. Rev. Stat., ch. 110A, par. 402(c)), and, in the alternative, it is argued that the sentence was excessive.

Using the language of the statute (Ill. Rev. Stat., ch. 38, par. 9—2(b)), the complaint charged that defendant committed the offense of voluntary manslaughter, stating that:

> "* * * without lawful justification, [he] did knowingly kill John Young, by shooting him through the head with a gun and that at the time of the killing he believed the circumstances to be such, that if they existed, would justify or exonerate the killing, but his belief was unreasonable * * *."

The language of the statute is as follows:

> "(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such, that if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

Prior to accepting defendant's plea the trial court admonished defendant relative to his constitutional rights, and over 70 pages of the record are devoted to a report of these proceedings. The court read the complaint to defendant and also the statute upon which it was based. He called attention to the fact that defendant was being charged with shooting the victim believing that under the circumstances he was justified, but that such belief was unreasonable. He was asked if he understood that, and he replied that he did. He was asked further if he understood under what circumstances a person may use force and what those circumstances were. Defendant replied, "Where you believe that you may be in great bodily harm." The court then stated that the State was charging that even though he may have believed the circumstances justified the use of force, the force used by defendant was not justified and that, therefore, the killing constituted voluntary manslaughter. Defendant again admitted that he understood this and that it was clear in his mind. On further inquiry the defendant again admitted that the voluntary manslaughter to which he was pleading involved the unreasonable use of force, and that having been charged with murder and having negotiated a plea to voluntary manslaughter with the murder charge being dismissed, it would be quite remarkable if he did not understand what he was doing. The defendant also agreed to this.

Thereafter, at the specific request of the court that a factual basis be established for the plea, the State presented the testimony of two police officers. Testifying from the facts related to them by defendant after his arrest and in his confession, they stated that defendant had known John Young for some time, that he had suggested to defendant that they

could make a large sum of money in a scheme to sell stolen cigarettes, and that defendant was needed because he was a truck driver and could drive the truck. Defendant had been leery of the scheme but finally, on Young's insistence, he agreed to go with him to the Rosebud Cafe in Pana where the truck was scheduled to arrive. Before leaving, however, defendant had a "certain feeling" similar to those he had experienced during his tours of duty in Viet Nam—that there would be danger—so he took a hand gun out of his own car and put it in his belt.

They drove to Pana in Young's car and after sitting there for some time defendant became nervous and started to query Young about why the truck had not arrived and whether the whole scheme was "just a farce." As he was so speaking, Young said, "Punk, you're dead," and reached for his pocket. Defendant thereupon automatically reacted as he had been trained to do in Viet Nam; he opened the car door on his side, pulled out his gun and as he rolled out of the car he shot once. When he got to his feet, he saw Young slumped over the steering wheel. He got back into the car to check his condition and determined that he was dead. When further investigation revealed that Young had not been armed he got scared and in a "state of shock" drove Young's car back to the Viking Lounge in Decatur from where they had started. He then washed and left his gun and clothing at a girl friend's. He told her what had happened and asked her to tell the police he had been with her. Later he returned to the car where the police had already discovered the body and he tried to talk to them, but no one would listen. Subsequently, while visiting another friend, he got a call informing him that the police wanted to see him, and he then voluntarily gave himself up. Both police officers stated that they believe defendant was telling the truth as he knew it.

On the completion of this testimony the court accepted defendant's plea, finding that he was entering it knowingly and voluntarily, that he understood the consequences, and that there was a factual basis for the plea.

The case was then continued for a hearing in aggravation and mitigation which was even more lengthy, consuming an additional 700 pages or more of the record. In effect, this hearing went into almost as much detail as a full trial might have, calling attention to defendant's excellent war record and endeavoring to explain away defendant's precipitate actions by attributing them to his war training in jungle warfare. It is now argued in this appeal that since defendant's reactions under the circumstances were automatic as he had been trained to act in Viet Nam, and since he genuinely believed that he acted in self-defense, the evidence was insufficient to prove that his actions were unreasonable, and, there-

fore, the court was in error in determining that there was a factual basis for the plea.

This argument misconstrues the issue. We are not here concerned with proof of guilt. Defendant has admitted his guilt, knowingly and understandingly. He has admitted killing a man motivated by the unreasonable belief that he was acting in self-defense. He chose not to stand trial on the charge of murder in exchange for his plea for voluntary manslaughter and a dismissal of the murder charge. He understood this, as did his counsel and the state's attorney throughout the prolonged plea negotiations. It is only appellate counsel who would like to have the establishment of a factual basis for a plea transformed into a trial finding of guilt beyond a reasonable doubt.

■■ The purpose behind the requirement that a court must determine a factual basis for a plea is to protect a defendant who is in the position of pleading voluntarily with an understanding of the charge but without realizing that his conduct does not actually fall within the charge. (*McCarthy v. United States,* 394 U.S. 459, 2 L.Ed.2d 418, 89 S.Ct. 1166.) Or, as we have stated in *People v. Billops,* 16 Ill.App.3d 892, there must be a determination that the facts fit the crime charged to prevent the possibility of defendant pleading guilty to a crime beyond the confines of his acts. Considering the question further in *People v. Hudson,* 7 Ill. App.3d 800, 803, we stated;

> "The requirement of Rule 402(c) that there be a factual basis for the plea is met when it appears on the record that there is a basis for reasonably concluding that the defendant actually committed the acts with the intent (if any) required to constitute the offense to which the defendant is pleading guilty. It is not necessary that it appear on the record beyond a reasonable doubt or even by a preponderance of the evidence that the defendant committed the offense. (See ABA Standards Relating to Pleas of Guilty, Par. 1.6, approved Draft, 1968). All that is required to appear on the record is a *basis* upon which the judge could *reasonably* reach the conclusion that there is a connection between the defendant's acts and the intent with which he acted *and* the acts and intent (if any) required to constitute the offense to which the defendant is pleading guilty."

Also in point is the case of *People v. Love,* 6 Ill.App.3d 577, 581-82, wherein it is stated:

> "* * * The determination of whether or not there is a factual basis for a plea is poles apart from a determination of whether or not after a full-blown trial the evidence will sustain a conviction or

establish a defense not made or asserted during the [plea] proceedings. \* \* \* There can be no question but what the exchange of a minimum of 7 years for manslaughter in lieu of a minimum of 14 years for murder and the dismissal of the murder indictment was considered by him and by the State's Attorney, and by his counsel as a good bargain. They made it openly and voluntarily. \* \* \* We do not here consider a situation where either the trial court or this court weighs possible evidence or determines the innocence or guilt of the defendant. A plea of guilty voluntarily made precludes the necessity for proof. In the face of the unanimity of agreement between the State's Attorney, defense counsel, and the defendant, we do not believe that any rule requires the trial court to go beyond this plea agreement honestly and fairly entered into."

■■ Applying the reasoning of these cases to the facts before us we find that the trial court fully complied with the requirements of Supreme Court Rule 402(c). The unequivocable and fully understood admission of defendant that he acted unreasonably, coupled with the testimony of the police officers relating the details of the crime as told to them by defendant, furnished a solid basis upon which the court could reasonably conclude that defendant's acts could fall within the charge to which he pleaded guilty. We conclude that no error was committed by the trial court in accepting defendant's plea of guilty to the offense of voluntary manslaughter.

■■ Finally, defendant contends that his sentence was excessive in light of the nature of the offense and defendant's background. However, the trial court took these matters into consideration and only after an extraordinarily lengthy hearing in aggravation and mitigation did he make his decision. The court even commented upon defendant's fine military record and that his experience in jungle fighting may have led him into killing without thinking. Nonetheless, the court stated, defendant did take a human life unnecessarily, and in view of the nature of the offense and all the circumstances involved he determined that a sentence of 5 to 15 years was appropriate. Upon a review of the entire record we cannot say that the sentence imposed was not proportionate to the nature of the offense or that the trial court abused its discretion. The sentence, therefore will not be disturbed.

The judgment of the Circuit Court of Christian County is affirmed.

Affirmed.

G. MORAN, P. J., and CARTER, J., concur.