THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM E. MARTIN, Defendant-Appellant.

First District (1st Division)   No. 77-820

Opinion filed March 27, 1978.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

Defendant, William E. Martin, entered a negotiated guilty plea to voluntary manslaughter (Ill. Rev. Stat. 1973, ch. 38, par. 9—2), and in accord with the State's recommendation, he was sentenced to a term of 6 years 8 months to 20 years. Within 30 days, defendant filed a motion to vacate his plea. (Ill. Rev. Stat. 1975, ch. 110A, par. 604(d).) After an evidentiary hearing the motion was denied. Defendant appeals contending that no factual basis to support his plea to voluntary manslaughter is contained in the record and that newly discovered evidence raises a substantial doubt that defendant committed the offense.

The incident in question occurred at a nursing home about 7:10 a.m. on October 18, 1974. The record is clear that the victim Carthell Carter, was wounded by a shotgun fired at him, and died several days later. Defendant was indicted for murder. After numerous delays, defendant, represented by appointed counsel other than the public defender, entered a negotiated plea to the lesser offense of voluntary manslaughter on June 7, 1976. The court admonished defendant in compliance with Supreme Court Rule 402 (Ill. Rev. Stat. 1975, ch. 110A, par. 402) when he pleaded guilty. Defendant said that no promises or threats had been made to induce his plea.

A factual stipulation was made pursuant to Supreme Court Rule 402 (Ill. Rev. Stat. 1975, ch. 110A, par. 402(c)) indicating that, if certain witnesses were called by the State, they would establish that the victim and Rosita Halmon entered the nursing home at 7:10 a.m. and defendant followed. Defendant then used a sawed-off shotgun to shoot the victim and fled in his 1964 Cadillac.

At the time defendant pleaded guilty he had been represented by the same court-appointed attorney for the previous 6 months. On his motion to withdraw his plea, he was represented by different counsel who was retained.

The motion and supporting brief presented several bases for withdrawal of the defendant's plea. Defendant claimed that another man known only as "Slick" had committed the offense, defendant had an alibi, and defendant's car was not at the scene of the shooting. Defendant also alleged that Rosita Halmon had testified at a preliminary hearing that she did not sufficiently see the assailant to identify him as the defendant. It was now averred that she was pressured by the victim's uncle, Lester Silas, with loss of her job if she did not identify the defendant as the assailant. She was now prepared to testify that she did see the assailant, and it was not the defendant.

Defendant also asserted that he had been incarcerated for about 20 months prior to his plea and was under considerable mental stress.

Defendant stated that his counsel erroneously advised him that the testimony of Lester Silas, who had identified defendant, could not be refuted.

At the hearing conducted on the motion to withdraw the plea, the court limited the testimony presented to evidence not available to defendant at the time his plea was entered. Defendant, however, did make an offer of proof as to the testimony of a family acquaintance and certain of defendant's family who would state they saw defendant at home about 20 minutes after the shooting, that defendant was partially clothed and appeared to have been sleeping. A poolroom employee would testify he saw defendant's Cadillac automobile parked behind the pool hall, and it did not appear to have been moved from October 8 until October 21, 1974.

Counsel also asserted that information concerning a Jerry Williams, who was not available to testify, was obtained after the guilty plea, and Williams would testify that he knew a man named "Slick." The record contains an affidavit from Williams which apparently was made and filed after defendant's motion to withdraw was denied. In this affidavit Williams stated he accompanied Slick in the latter's vehicle to the nursing home a day before the shooting to see a "guy" because Slick had "something" for him. However, this individual did not appear. Several days later Williams met Slick who said that he had to do "something" to the "guy" because he owed Slick $200. Williams stated in his affidavit that not until later did he realize Slick shot the deceased. The record does not, in any manner, further identify Jerry Williams or indicate his current whereabouts; nor is there any suggestion concerning the whereabouts of the man apparently identified only as Slick.

At the hearing Rosita Halmon testified that she lived with the victim and worked at the nursing home with him where the slaying occurred. At the time of the shooting she obtained a profile view of the assailant and now claimed the assailant was heavier than defendant and was known as Slick. She previously knew Slick because she obtained marijuana from him. Her testimony suggested that the motive for the killing may have been related to the marijuana transaction.

In explaining the variation from her present testimony and her testimony given at the preliminary hearing, she claimed that Lester Silas had threatened her with loss of her job if she did not identify defendant. She also feared that her mother, who also worked with Silas, would be affected.

On cross-examination, this witness was impeached by her previous testimony that she could not identify the assailant because she only saw him fleeing out the door after the shooting. She had also testified that she

was unable to identify defendant as the assailant and did not see his face.

Initially defendant contends that the aforesaid factual stipulation is insufficient because it establishes his guilty for murder not voluntary manslaughter. Specifically, defendant argues that no facts are presented to show he acted under a sudden or intense passion or that he acted unreasonably when he thought his life was threatened. (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(a)(b).) Defendant concedes the record shows a pretrial conference was held in which the trial judge participated. However, defendant argues that the record does not indicate the trial judge received sufficient information to make a determination that a plea to voluntary manslaughter was proper.

■■ The record shows the trial court had substantial familiarity with the case because of the plea conference. Under such circumstances we do not find defendant's contention persuasive. (*People v. Nyberg* (1976), 64 Ill. 2d 210, 215, 356 N.E.2d 80, 82.) The purpose of setting forth a factual basis for the plea is to protect a defendant from pleading guilty to a charge he did not commit and which was beyond his acts. (*McCarthy v. United States* (1969), 394 U.S. 459, 467, 22 L. Ed. 2d 418, 426, 89 S. Ct. 1166, 1171; *People v. Quick* (1974), 24 Ill. App. 3d 286, 289, 320 N.E.2d 335, 338.) It would be anomalous to permit defendant to set aside an otherwise valid guilty plea because the factual basis set forth in the record establishes a more serious crime for which defendant has evaded prosecution by means of a negotiated guilty plea. We therefore conclude that the function served by setting forth a factual basis for a guilty plea has been fulfilled, and his claim concerning such matter is without merit.

Defendant also maintains that the newly discovered evidence presented to the trial court should permit him to plead anew because a doubt of his guilt now exists. He relies on the testimony of Rosita Halmon and matters contained in the offer of proof concerning Jerry Williams and defendant's alibi witnesses.

■■ As stated in *People v. Worley* (1966), 35 Ill. 2d 574, 576, 221 N.E.2d 267, 269:

> "The general rule is that it is within the sound discretion of the trial court whether a plea of guilty may be withdrawn. (*People v. Lang*, 402 Ill. 170; *People v. Throop*, 359 Ill. 354.) This discretion will ordinarily not be disturbed unless it appears that the guilty plea was entered through a misapprehension of the facts or of law, that defendant has a defense worthy of consideration, or where there is doubt of the guilt of the accused and the ends of justice would better be served by submitting the case to a trial. (*People v. King*, 1 Ill. 2d 496; *People v. Lang*, 402 Ill. 170.)"

(See also *People v. White* (1978), 57 Ill. App. 3d 147, 372 N.E.2d 1065;

*People v. Douthit* (1977), 51 Ill. App. 3d 758, 366 N.E.2d 955.) The burden is upon the defendant to establish a factual basis for his innocence to permit withdrawal of the guilty plea; a bare allegation to this effect is generally insufficient. (*People v. Pierce* (1971), 48 Ill. 2d 48, 50, 268 N.E.2d 373, 375; *People v. Dumas* (1977), 50 Ill. App. 3d 637, 365 N.E.2d 1320, 1322.) Such judicial discretion should be exercised in favor of innocence. *People v. Walston* (1967), 38 Ill. 2d 39, 42, 230 N.E.2d 233, 234.

■■ It has been noted that the "least influence" upon defendant to plead guilty will permit withdrawal of a plea when the aforesaid standards are established. (*People v. Morreale* (1952), 412 Ill. 528, 532, 107 N.E.2d 721, 723.) However, in the present case defendant did not contend that counsel who represented him at the plea proceedings, or the prosecution, coerced his plea. Rather, the record indicates compliance with the statutory criterion necessary to show the plea was knowingly and voluntarily entered by defendant with full awareness of its consequences. Nor does defendant suggest that his counsel at that time was incompetent. An evidentiary stipulation clearly showed defendant's criminal culpability, and defendant personally disclaimed any threats or coercion occurred to influence his guilty plea to voluntary manslaughter. Furthermore, defendant did not object to the contents of the stipulation.

■■ The testimony of Rosita Halmon was in direct contradiction to her version of the incident related at the preliminary hearing, and the explanation for the variance was attributed to her belief she would lose her job if she exonerated defendant. The trial court ascertained her credibility (*People v. White* (1978), 57 Ill. App. 3d 147, 372 N.E.2d 1065), and implicit in its decision is the finding that she was not a credible witness.

■■ Moreover, defendant's present claim of an alibi defense is based primarily on the proffered testimony of his family which was obviously subject to discovery prior to his guilty plea. While initially defendant did advance an alibi defense in his response to the State's motion for discovery prior to his plea, neither witness identified in that response was named by defendant when he sought to withdraw the plea based upon his alibi claim.

■■ Finally, we note that the affidavit of Jerry Williams, filed after the trial court's denial of the motion to withdraw, is based on surmise as to what "Slick" had done. There is no showing in this record to establish Williams' threshold reliability; thus any reliance upon his claim of what a third party said to him would be inadmissible under the circumstances presented. *People v. Craven* (1973), 54 Ill. 2d 419, 426-29, 299 N.E.2d 1, 5-6.

Accordingly, we find no basis to conclude the circuit court erred in

denying defendant's motion to withdraw his guilty plea, and we affirm its judgment.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.