THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS C. KOKORALEIS, Defendant- Appellant.

Second District   No. 2—88—0081

Opinion filed January 25, 1990.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

In November 1982, the defendant, Thomas C. Kokoraleis, was interrogated by the police regarding the unsolved abductions and murders of several young women, and he eventually gave inculpatory statements regarding the murders of Lorraine Borowski, Linda Sutton, Sui Mak and Carole Pappas. After this court reversed his original convictions of the murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)) and rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1(a)) of Borowski (*People v. Kokoraleis* (1986), 149 Ill. App. 3d 1000, 501 N.E.2d 207, *appeal denied* (1987), 114 Ill. 2d 553, 508 N.E.2d 733), the defendant entered into an agreement with the State by which he pleaded guilty to the Borowski murder in return for a sentence of 70 years' incarceration and the State's agreement to nol-pros a subsequent indictment in the Sutton case. The plea agreement did not encompass the Pappas murder. Shortly thereafter, the defendant filed a motion with the circuit court seeking to withdraw his guilty plea. The basis of the motion was the discovery, some three weeks after the entry of the plea agreement, of the body of Carole Pappas; the State conceded that this finding proved that the defendant was not involved with Pappas' accidental death. The defendant claimed that, because his confession regarding the Pappas murder was false, then the veracity of his other inculpatory statements was called into question. The trial court denied the defendant's motion to withdraw his guilty plea, and the defendant now appeals from the order denying his motion. At issue on appeal is whether the discovery of Pappas' body provides sufficient grounds to allow the defendant to withdraw a voluntarily made guilty plea. We affirm the judgment of the trial court.

The same trial court judge who accepted the defendant's guilty plea also denied his motion to withdraw it, and he had also presided over the defendant's first trial. In ruling on the defendant's motion, the trial court heard arguments that touched on the entire history of the defendant's prosecution, and it appears that the trial court properly endeavored to evaluate the defendant's motion in the context of the earlier proceedings. (See *People v. Nyberg* (1976), 64 Ill. 2d 210, 214-15, 356 N.E.2d 80, 82.) Thus, to properly review the trial court's determination, we must first recount a portion of what has already transpired with regard to the prosecution of this defendant.

In the fall of 1982, various law enforcement agencies in northern Illinois were investigating the abductions and murders of several women whose bodies, when discovered, evidenced severe breast mutilations. Among the victims of these murders were Linda Sutton, who was killed in 1981, and Lorraine Borowski, who had been missing

since May 1982. Borowski's body was discovered on October 10, 1982. By November 1982, three suspects had been arrested and charged in connection with a number of the murders. The suspects were Robin Gecht (Gecht), Edward Spreitzer (Spreitzer), and Andrew Kokoraleis (Andy), the defendant's brother.

On the afternoon of November 10, 1982, Detectives John Sam and Warren Wilkosz of the Du Page County sheriff's office went to the Villa Park neighborhood where the father of the two Kokoraleis brothers lived. Sam was investigating the Borowski killing, and Wilkosz was investigating the Sutton murder. The two went to the neighborhood to investigate the case against Andy; the defendant was not a suspect. At about 2 p.m., the defendant approached the two officers and asked to talk with them about his brother Andy. The three then proceeded to the Villa Park police station. They arrived at 2:30 to 2:45 p.m., and the two officers questioned the defendant. Though he did not implicate himself in any of the murders, the police officers asked the defendant to submit to a polygraph examination. The defendant agreed, and arrangements were made for an examination to take place at the Elmhurst police station at 5 p.m. The defendant waited at the Villa Park police station until he was taken to Elmhurst, but he was not subjected to further questioning from 3:15 until 5:15 p.m.

Commander John Millner of the Elmhurst police department conducted a polygraph examination of the defendant which lasted approximately 1½ to 2 hours. Detectives Sam and Wilkosz were not present during the examination. During this interview, the defendant stated that he was not involved in any murders. Commander Millner told the defendant that he was not being truthful and suggested that perhaps the defendant had only witnessed the murders. The defendant then admitted that he was present when some of the killings took place. Commander Millner then ended the interview, and he approached Detectives Sam and Wilkosz to suggest that they continue to interrogate the defendant based on his admission of involvement in the murders.

At approximately 6:45 p.m., Detectives Sam and Wilkosz again began to question the defendant. At one point, Wilkosz confronted the defendant with a document purported to be Spreitzer's confession. He told the defendant that Spreitzer's confession implicated him in the murder, but Wilkosz knew that this was not, in fact, true. At this point, the defendant began to tell the detectives that he witnessed the Borowski and Sutton killings. At 8:42 p.m. the officers began to tape-record the defendant's statement regarding his involvement in the murders. This taping continued, intermittently, until about midnight.

In his taped statement, the defendant said that he was riding in an automobile with his brother Andy and Spreitzer when they abducted a young woman from an area near a shopping mall. The defendant identified a photograph of Borowski as the woman abducted. The defendant stated that Borowski was taken to a motel room where Spreitzer and Andy removed her clothes and forced her to engage in sexual intercourse. Andy then placed piano wire around the victim's breast and squeezed until the breast was removed, and Andy and Spreitzer then had intercourse with the wound in the victim's chest. Spreitzer then struck the victim in the chest with an axe and killed her. The body was then redressed, taken to a local cemetery, and left there. According to the defendant, he was present when these events took place, but he did not participate in them.

Also on the night of November 10, the defendant gave an inculpatory statement regarding the abduction and murder of Linda Sutton. The defendant at this time maintained that he had been present for only two murders. The defendant here has stipulated, however, that on November 10 he also gave a statement inculpating him in the murder of Sui Mak.

The next day, on November 11, police authorities again subjected the defendant to questioning. At 7:30 p.m., the defendant gave a statement to Detective Thomas Vosburgh of the Du Page County sheriff's office and Detective Grady Clark of the Wheaton police department. A court reporter transcribed the statement. The defendant identified a photograph of Carole Pappas, a woman who had been missing for two months, as the woman whom he, Andy, Spreitzer and Gecht had abducted from a shopping mall some months earlier. Pappas was last seen on September 11, 1982, in the Marshall Field store at the Stratford Square shopping mall in Bloomingdale, Illinois.

The defendant stated that the incident took place in a shopping mall he could not identify, but he did recall that the mall contained a Marshall Field store. According to the defendant, Pappas, who was either entering or exiting her car in the parking lot in front of the Marshall Field store, was forced by Spreitzer and Andy into a van driven by Gecht. Spreitzer then entered Pappas' car, and the two vehicles proceeded to an area of farmland about 30 to 45 minutes removed from the mall. The defendant stated that he watched from the van as the other men took the woman into the field, tore off her clothes, and forced her to engage in sexual intercourse. The defendant claimed that Pappas was then bound and gagged, after which Gecht removed her left breast with a piano wire; the three then had intercourse with the wound in the chest. Before returning to the van, the defendant

said, Gecht strangled Pappas to death. The four men then left the area in the van; the defendant was unsure whether the other three returned to the field later to take Pappas' car. In his statement, the defendant noted that he had been involved in two other similar incidents.

On November 12, 1982, the defendant gave another statement to Detective Vosburgh regarding Pappas' purported murder. The record also reveals that the defendant spoke to Richard Bueke of the Cook County State's Attorney's office later that same day. In his statement to Bueke, the defendant said that he had been present at only two killings.

The State subsequently indicted the defendant for the murder and rape of Lorraine Borowski. His pretrial motion to suppress his statements, which he alleged were given involuntarily, was denied, and a portion of the defendant's statements was introduced into evidence at his jury trial. Among the witnesses the State presented at trial was Frank Orlosky, a physical anthropologist, who testified that Borowski's body, which was badly decomposed when discovered, evidenced signs of trauma inflicted by a small circular object like an ice pick. The skin around the area of the victim's left breast was no longer present. Orlosky found no signs of trauma in the area of the left breast, but he acknowledged that a clean cut in that area would leave no such signs. Some testimony regarding the Sutton murder was also presented at trial; no aspect of the Pappas disappearance was made a part of the trial proceedings.

The defendant did not testify at trial, but he did present a number of witnesses on his behalf. Several witnesses were presented to show that no area motels reported finding blood or similar signs of great violence on their premises in the time since the victim had been missing. Also testifying for the defendant was Dr. Albert H. Stipes, a psychiatrist who examined the defendant after his arrest. Dr. Stipes characterized the defendant's intelligence level as bordering just above mental retardation, and he stated that the defendant tended to be intimidated by figures of authority. Dr. Stipes also testified that the defendant was prone to making poor judgments that did not account for long-term consequences, and he also was of the opinion that the defendant tended to answer questions in a manner that would please the person asking the questions.

After deliberating, the jury returned verdicts of guilty on both the murder charge and the rape charge. On appeal, however, this court reversed the defendant's rape conviction because the State failed to establish the *corpus delicti* of that crime. (*Kokoraleis*, 149 Ill. App. 3d

at 1026-30, 501 N.E.2d at 224-27.) Regarding the defendant's murder conviction, the court held that the defendant's statements used at trial were voluntarily given. The defendant's murder conviction was reversed, however, because of the trial court's failure to allow into evidence the statements of Andy and Spreitzer, which did not indicate that the defendant was ever present when Borowski was abducted and killed. The cause was then remanded for a new trial on the murder charge. *Kokoraleis*, 149 Ill. App. 3d at 1017-26, 501 N.E.2d at 218-24.

Subsequent to the defendant's trial in the Borowski case, but before his convictions were reversed on appeal, the State indicted the defendant for the murder of Linda Sutton. The State made known its intention to seek the death penalty for that offense. In July 1987, after a series of negotiations between defense counsel and the office of the Du Page County State's Attorney, the defendant entered into a plea agreement by which he would plead guilty to the murder of Borowski; in return, the State agreed to nol-pros the indictment in the Sutton case and to seek a sentence of 70 years' incarceration. The plea agreement did not in any way relate to the disappearance of Carole Pappas or to the defendant's possible prosecution for that incident.

Pursuant to Supreme Court Rule 402 (107 Ill. 2d R. 402), a hearing was held on July 16, 1987, before Judge John J. Nelligan, the same judge who had presided over the defendant's earlier trial. At the hearing, the trial court was advised of the factual basis for the defendant's plea. The defendant stipulated that, if the cause went to trial, the State would present evidence to show that Borowski had disappeared; that her body was found on October 10, 1982, with her left breast removed; that the defendant admitted to police officers that he and his cohorts had abducted Borowski, removed her left breast with piano wire, and killed her; and that the defendant was part of a cult that would rape and kill women and cut off their breasts.

The trial court advised the defendant that it would accede to the agreed-upon 70-year sentence. The trial court also thoroughly admonished the defendant regarding his right to proceed to trial on the charges against him and regarding all concomitant trial rights, and the defendant acknowledged that he waived such rights. The trial court found that the defendant waived his rights knowingly and voluntarily, and it further found the existence of a factual basis for the plea. The court accepted the defendant's plea of guilty and imposed the agreed-upon sentence.

The parties here have stipulated that in August 1987, the body of Carole Pappas was discovered in her car, which had been submerged in a retention pond in Wheaton, Illinois. The Du Page County coroner ruled that the cause of Pappas' death was accidental drowning, and the pathologist noted no signs of physical trauma on her body. Pappas' body was found fully clothed, and no garments showed signs of ripping or tearing. The State here concedes that this discovery indicates that the defendant was not in any way involved in Pappas' accidental death.

Based on this discovery, the defendant filed a motion pursuant to Supreme Court Rule 604(d) (107 Ill. 2d R. 604(d)) seeking to withdraw his plea of guilty to the murder of Lorraine Borowski and to vacate the judgment entered thereon. The motion was filed within 30 days of the entry of the defendant's guilty plea. The basis of the motion was the defendant's contention that the discovery of Pappas' body in a condition totally inconsistent with the defendant's account of her murder proved that the defendant's November 11, 1982, statements regarding the Pappas abduction were completely false and were fabricated by the defendant. This, the defendant asserted, provided good reason to suspect that the defendant's other inculpatory statements regarding the Borowski and Sutton murders were also fabrications. The defendant claimed that this new evidence cast doubt on the court's original determination that the statements the defendant gave to the police were elicited voluntarily, and so the defendant should be allowed to withdraw his guilty plea.

A hearing on the defendant's motion was held on January 15, 1988, again before Judge Nelligan. At the hearing, defense counsel contended that the defendant's inculpatory statements were fabricated by the defendant and were based upon certain information which had been suggested to him by the police. The nearly retarded defendant, it was argued, was confused and intimidated by persistent police questioning; in order to appease his questioners, he falsely told them that he was a witness to the crimes without knowing how such an admission would affect his own culpability. In support of this "police coaching" scenario, defense counsel noted that the parts of the defendant's statements which were consistent with independent evidence of the Borowski murder were, in fact, already known to the police officers who interrogated the defendant from November 10 through 12, 1982. Though he apparently conceded that his guilty plea was entered voluntarily, the defendant contended that the new evidence warranted reconsideration of the issue of whether his earlier statements were given freely and voluntarily.

The State, on the other hand, contended that the new evidence regarding Pappas was not relevant to the plea agreement into which the defendant had voluntarily entered. The State argued that the plea agreement concerned only the Borowski and Sutton murders, not the Pappas disappearance, and that the defendant's statements regarding Pappas, even if false, did not impinge upon the accuracy of the statements regarding Borowski and Sutton given a full day earlier. The trial court denied the defendant's motion to withdraw his plea, finding that the new information regarding Pappas was collateral to the plea agreement which precipitated the guilty plea. The defendant then timely appealed from the trial court's denial of his motion.

On appeal, the defendant again argues that the information regarding Pappas, discovered after he had entered into the plea agreement, calls into question the voluntariness of his earlier statements to the police. Noting that he faced possible life imprisonment for the Borowski killing and a sentence of death for the Sutton murder and that he knew his inculpatory statements would be used against him in such proceedings, the defendant contends that the trial court should have allowed him to withdraw his guilty plea because of the light the newly-discovered information regarding Pappas shed on his earlier statements. The State maintains that the trial court correctly found that the Pappas information was collateral and not sufficient to permit the defendant to withdraw his voluntary plea of guilty to the Borowski murder.

■ The general principles governing the withdrawal of guilty pleas are well established. It is axiomatic that a defendant has no absolute right to withdraw a guilty plea. (*People v. Smithey* (1983), 120 Ill. App. 3d 26, 31, 458 N.E.2d 87, 91.) The decision whether to allow a defendant to withdraw a guilty plea is within the sound discretion of the trial court; generally, such a motion is allowed if it appears that the plea resulted from a misapprehension of law or fact or as a result of a misrepresentation by counsel, the State's Attorney, or someone else in authority. (*People v. Paul* (1981), 93 Ill. App. 3d 302, 311, 417 N.E.2d 251, 258.) Misapprehension of fact or law goes to the question of whether the plea was voluntarily and intelligently made. (*People v. Kraus* (1984), 122 Ill. App. 3d 882, 888, 461 N.E.2d 1036, 1041.) A motion to withdraw a guilty plea may also be allowed where the defendant has a defense worthy of consideration, or where there is doubt of the guilt of the accused, and justice would be better served by submitting the cause to a trial. (*People v. Martin* (1978), 58 Ill. App. 3d 633, 637-38, 374 N.E.2d 1012, 1015.) The defendant bears the burden of demonstrating sufficient grounds to allow withdrawal of

the plea. (*People v. Nichols* (1981), 96 Ill. App. 3d 354, 356, 420 N.E.2d 1166, 1168.) Unless the circumstances of the defendant's plea fall into one of these categories, a trial court's denial of a motion to withdraw a guilty plea ordinarily will not be disturbed. *People v. Jameson* (1944), 387 Ill. 367, 374-75, 56 N.E.2d 790, 793.

In this appeal, we believe the defendant's arguments pertaining to "misapprehension" of fact or law represent unwarranted contortions of the facts in an attempt to avail the defendant of legal theories which do not properly apply here. First, it cannot be said that the State was responsible for the defendant's lack of knowledge regarding the ultimate fate of Pappas. Any "misapprehension" in this regard was not induced by the State or the trial court, and as such it cannot serve as the pretext to permit the defendant to withdraw his guilty plea. (*People v. Smithey* (1983), 120 Ill. App. 3d 26, 33, 458 N.E.2d 87, 93.) Second, the soundness of defense counsel's advice regarding the plea agreement simply cannot be measured by facts unknown to all parties at the time the agreement was entered into. The inquiry must focus "not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases." (*McMann v. Richardson* (1970), 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1449.) The only deficiency the defendant now ascribes to his trial counsel was the inability to foresee the ultimate discovery of Pappas' body; clearly, this is insufficient to constitute incompetent advice by the defendant's trial counsel.

What remains to be considered is whether the trial court should have allowed the defendant to withdraw his guilty plea because he has a defense worthy of consideration or because there is doubt of his guilt. (See *People v. Martin* (1978), 58 Ill. App. 3d 633, 637-38, 374 N.E.2d 1012, 1015.) We note that the defendant wishes to vacate his guilty plea so that he might be allowed to advance essentially the same defense put forth at his first trial, namely, that his inculpatory statements were fabricated as a result of police coaching.

At his first trial, counsel for the defendant advanced this defense by showing that the defendant's intelligence bordered on mental retardation, and an expert witness testified that the defendant was prone to giving questioners the answers he believed they wanted to hear. The defendant also made note of the fact that it was a police officer who first suggested that the defendant might have only witnessed the killings. Moreover, the defendant's inculpatory statements came only after a police officer falsely told him that Spreitzer's confession implicated him in the crimes. Defense counsel also made note

of the frequent internal inconsistencies in the defendant's statements. Finally, defense counsel highlighted two inconsistencies between the defendant's statements and the physical evidence: the defendant said Borowski was killed with an axe, but the physical anthropologist testified that the only signs of trauma on the victim were inflicted by an instrument like an ice pick; and, although the defendant described Borowski's violent murder occurring in an area motel room, no motel reported finding large amounts of blood or other indicia of such an occurrence.

Additionally, if the defendant could proceed to trial he would be permitted to introduce into evidence the statements of his brother Andy and Spreitzer, which did not implicate him in the Borowski killing. (See *Kokoraleis*, 149 Ill. App. 3d at 1017-26, 501 N.E.2d at 218-24.) We do not doubt that this strategy would constitute a colorable, if not necessarily successful, defense which could be presented at a trial. Yet it must be remembered that, when he entered into the plea agreement, the defendant was well aware that such a defense could have been put forth at trial. Instead of proceeding to trial, however, the defendant opted to forego presenting such a defense in favor of the agreed-upon plea. Of course, what the defendant did not know then was that the body of Carole Pappas soon would be discovered. The question now is whether this new discovery is sufficient to allow the defendant to reconsider his earlier decision, voluntarily made, that he did not wish to proceed to trial on the charges against him.

The defendant argues that the Pappas discovery presents him with the first and only physical evidence proving that at least one of his statements to the police was a complete fabrication. This, the defendant suggests, is sufficient to allow him to now choose to proceed to a trial on the charges against him.

As the State correctly notes, the fact that the defendant's statement regarding Pappas' murder turned out to be incorrect does not mean that it was a fabrication. This defendant has implicated himself in some four killings; it is possible that the defendant truthfully told the police about the actual abduction and murder of a woman, but incorrectly identified her as Carole Pappas. Thus, while the discovery of Pappas' body shows that the defendant's statement regarding her disappearance was inaccurate, it does not prove that the statement was a fabrication.

Moreover, even if we assume that the defendant did fabricate the story regarding Pappas, this does not necessarily impugn the reliability of the defendant's initial statements to the police. The statement regarding Pappas was given a full day later than the statements re-

garding Borowski and Sutton, which were the defendant's first inculpatory statements to the police. It is important to remember that the plea agreement was based entirely upon the Borowski and Sutton murders. The defendant asks us to speculate that, because he was allegedly lying to the police on November 11, then he must have been lying on November 10. While such speculation is plausible, we might just as easily speculate that the defendant, after he made known his involvement in the Borowski and Sutton murders, began to fabricate statements in an attempt to win more favorable treatment from the authorities in return for his cooperation.

Furthermore, the defendant's own "police coaching" scenario could support an inference that his statements regarding Pappas were fabricated, while those regarding Borowski and Sutton were not. The statement pertaining to Pappas was given to different officers than those who originally questioned the defendant about Borowski and Sutton. That the Pappas statement was ultimately proved inaccurate only weakly supports the notion that the statement was the result of police coaching; it is an even greater leap to claim that such coaching permeated all of the defendant's statements to a variety of different police officers. We note that the day after he implicated himself in the Pappas disappearance the defendant reverted to his original claim that he had witnessed only two murders.

We cannot conclude that the trial court abused its discretion by determining that the new information pertaining to Pappas was collateral to the defendant's plea agreement and insufficient to warrant withdrawal of his guilty plea. A defendant seeking to withdraw a guilty plea has the burden of demonstrating to the trial court that withdrawal is necessary to correct a manifest injustice based on the facts of the case. (*People v. Bovinett* (1979), 73 Ill. App. 3d 833, 835, 392 N.E.2d 428, 429-30.) Here, the trial judge who had thorough knowledge of the defendant's case determined that denial of the motion to withdraw the plea was not necessary to correct any manifest injustice. Under these facts, we cannot say that such a determination was an abuse of the discretion properly vested in the trial court, and we therefore affirm the order denying the defendant's motion to withdraw his plea.

Judgment affirmed.

McLAREN and REINHARD, JJ., concur.