700 N.E.2d 175 (1998)
298 Ill. App.3d 951
233 Ill.Dec. 74
In re E.V., a Minor (E.V., Respondent-Appellant,
v.
The People of the State of Illinois, Petitioner-Appellee).
No. 1-98-0764.
Appellate Court of Illinois, First District, First Division.
August 24, 1998.
*176 Northwestern University School of Law Legal Assistance Clinic, Chicago (Angela M. Coin, of counsel), for Respondent-Appellant.
State's Attorney of County of Cook, Chicago (Richard A. Devine, Renee Goldfarb, Alan J. Spellberg, Lisette C. Mojica, of counsel), for Petitioner-Appellee.
Justice GALLAGHER delivered the opinion of the court:
On August 26, 1997, respondent entered an admission to a delinquency petition for unlawful use of a weapon under the instant case, as well as unlawful possession of a firearm under another case. The trial court accepted respondent's admissions, found him delinquent, released him on home confinement to the custody of his grandmother and scheduled sentencing for October 7, 1997. On September 3, 1997, eight days after entering an admission to unlawful use of a weapon, respondent was arrested and charged with the August 9, 1997, murder of Joseph Shadden.
The weapon for which respondent had been arrested in the unlawful use of a weapon case was a .25-caliber semi-automatic handgun. The gun that was used to kill Shadden was also a .25 caliber. A report from the Illinois State Police Crime Laboratory dated September 2, 1997, indicated that the weapon respondent possessed was the same weapon used to kill Shadden. After receiving this report, and upon further investigation, police arrested respondent for the murder of Shadden.
Subsequently, respondent sought to withdraw his plea of guilty in the unlawful use of a weapon case, contending that the admission was unknowing and involuntary based upon the State's failure to disclose evidence that would have shown that, at the time he pled guilty, he was a suspect in the Shadden murder. His requests were denied and he now appeals.
On August 12, 1997, respondent was arrested for the unlawful use of a weapon. He was placed in custody by Officer Rochowicz. Later that day, Officer Rochowicz contacted Detective Murray, who was one of several detectives investigating the Shadden murder, and informed him that he had arrested respondent for unlawful use of a weapon. He further informed him that the weapon which was retrieved from respondent was a.25-caliber Beretta semi-automatic which had been inventoried under No. 1857818. On the same day, detectives assigned to the Shadden murder investigation sent a memorandum to the state police forensic science *177 command requesting that, as part of the Shadden murder investigation, a firearms comparison be made between the handgun recovered from respondent, a bullet recovered from Shadden's body, and six .25-caliber cartridge cases recovered at the scene of the shooting of Shadden. Additionally, the detectives investigating the Shadden murder wrote a general office memorandum to "all watches" in reference to the Shadden murder informing them of the request for the firearms comparison. Detective Murray, another of the detectives investigating the Shadden murder, testified that the police considered respondent a suspect in the Shadden murder on August 12, 1997. Respondent's admission of guilt on the unlawful use of a weapon was entered on August 26, 1997. At that time, respondent was considered a suspect in the Shadden murder, but the firearms comparison had not yet been reported. Seven days later, on September 2, 1997, the state police forensic science division supplied the results of the firearms comparison test, which showed that the gun retrieved from respondent was the same as that used in the Shadden murder, to the Chicago police. Respondent was arrested for the murder on September 3, 1997.
On October 7, 1997, the disposition on the unlawful use of a weapon case was continued. On January 22, 1998, new counsel for respondent filed a motion to withdraw the plea of guilty. That motion was denied on January 27, 1998. On February 27, 1998, final disposition was entered on the unlawful use of a weapon case and respondent was placed on 18 months of probation, with a 60 day stay of mittimus. On March 4, 1998, counsel for respondent filed a second motion to withdraw the plea of guilty and to vacate judgment, which was denied. A timely notice of appeal was subsequently filed.
Respondent requests on appeal that this court either allow him to withdraw his admission or vacate the adjudication of wardship. "[A]s a matter of public policy, Illinois courts are under a duty to carefully guard the rights of a minor and take note of legitimate and substantial errors in proceedings involving minors." In re D.L.B., 140 Ill.App.3d 52, 55, 94 Ill.Dec. 487, 488 N.E.2d 313, 315 (1986). Our standard of review of an order denying withdrawal of a guilty plea is an abuse of discretion standard. See, e.g., People v. Gibson, 11 Ill.App.3d 875, 880, 297 N.E.2d 31, 35 (1973). This court outlined the well-established general principles governing the withdrawal of guilty pleas in People v. Kokoraleis, 193 Ill.App.3d 684, 140 Ill.Dec. 482, 549 N.E.2d 1354 (1990). The court stated:
"It is axiomatic that a defendant has no absolute right to withdraw a guilty plea. [Citation.] The decision whether to allow a defendant to withdraw a guilty plea is within the sound discretion of the trial court; generally, such a motion is allowed if it appears that the plea resulted from a misapprehension of law or fact or as a result of a misrepresentation by counsel, the State's Attorney, or someone else in authority. [Citation.] Misapprehension of fact or law goes to the question of whether the plea was voluntarily and intelligently made. [Citation.] A motion to withdraw a guilty plea may also be allowed where the defendant has a defense worthy of consideration, or where there is doubt of the guilt of the accused, and justice would be better served by submitting the cause to a trial. [Citation.] The defendant bears the burden of demonstrating sufficient grounds to allow withdrawal of the plea. [Citation.] Unless the circumstances of the defendant's plea fall into one of these categories, a trial court's denial of a motion to withdraw a guilty plea ordinarily will not be disturbed. [Citation.]" Kokoraleis, 193 Ill.App.3d at 691-92, 140 Ill.Dec. 482, 549 N.E.2d at 1360.
The circumstances of respondent's plea in the instant case do not fall into any of these categories.
Respondent contends, however, that his plea resulted from a misapprehension of fact which rendered his plea unknowing and involuntary because the State did not provide him with the memoranda that would have alerted him to the fact that he was a possible suspect in the separate investigation of the Shadden murder. In denying respondent's motion to withdraw his guilty plea or vacate judgment, the trial court opined that the *178 State "cannot be charged with being aware of every case the police are pursuing." While we agree with that general comment, we disagree that it compelled the denial of respondent's motion in this case. Here, the State failed to turn over documents that related to the specific handgun at issue. The State also failed to disclose that its witness, Officer Rochowicz, had personally alerted the homicide division of respondent's arrest in order that the detectives could determine whether the handgun recovered from respondent matched that used in the Shadden murder.
As our supreme court has noted:
"Rule 412 is silent as to those persons whose possession and control of material and information must be imputed to the State. [Citation.] Illinois courts have held that the officers and personnel of the Chicago Police Department Crime Laboratory are investigative personnel within the meaning of Rule 412(f). [Citation.] The State's failure to disclose to the defense [pertinent materials] cannot be excused by the argument that the assistant State's Attorneys were unaware of the [material's] existence, since both they and the police are required to cooperate and ensure that all relevant information will be provided and that discovery will be accomplished." People v. Thompkins, 121 Ill.2d 401, 425-26, 117 Ill.Dec. 927, 521 N.E.2d 38, 48 (1988).
We think that the same principle holds true in the instant case, where both Officer Rochowicz and all who received the "all watches" memorandum from the detectives investigating the Shadden murder were aware of the firearms comparison being performed by the state police forensic science command. Nevertheless, applying the guidelines outlined above, the trial court did not abuse its discretion in denying respondent's motion to withdraw his guilty plea, for reasons explained further in this opinion.
Respondent contends that the State's failure to disclose the materials in issue constituted a violation of both federal and state discovery rules. Specifically, respondent contends that the State violated the mandates of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as well as Illinois Supreme Court Rule 412 (134 Ill.2d R. 412).
In Brady, the United States Supreme Court held that the prosecution's nondisclosure of evidence favorable to an accused upon request violates due process where the evidence is material to the guilt or innocence of a defendant. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Brady decision involved a request of a "specific" nature, similar to that in the present case. Contrary to the State's assertions, respondent did not make a "general request for exculpatory evidence" but, rather, specifically requested copies of "all memoranda, notes, reports, street files, progress reports, running files and felony worksheets (including notes on the back sides of any sheets or folders)." This distinction is not critical, however, because even in the case of such a specific request for information, in order for the defendant to show a Brady violation on the part of the prosecution, a defendant is required to show favorableness and materiality of the undisclosed material. See, e.g., People v. Velez, 123 Ill.App.3d 210, 217, 78 Ill.Dec. 627, 462 N.E.2d 746, 751 (1984). Thus, since the materials at issue here, namely, the internal police memoranda, were not exculpatory, the State's failure to disclose them does not constitute a Brady violation. In view of this, it is irrelevant whether the memoranda in issue pertained to the instant case, as respondent contends, or pertained solely to the Shadden murder case, as the State contends.
The same principle applies to the requirements of Supreme Court Rule 412(c), which provides in pertinent part that "the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged." (Emphasis added.) 134 Ill. R. 412(c). The memoranda here did not tend to negate the guilt of the respondent as to the charged offense of unlawful use of a weapon. At the time respondent pled guilty in the instant case, the fact that the police also suspected him of the murder had no bearing upon his guilt or innocence of the unlawful use of a weapon *179 charge. Respondent has not cited, and our independent research has not revealed, any case where it has been held that the State has a duty to disclose potentially "inculpatory" evidence of a separate uncharged offense.
Respondent makes the additional claim that he received ineffective assistance of counsel and lists a number of alleged failures on the part of his trial counsel which relate to further investigation of the handgun at issue. We have reviewed respondent's contentions and have determined that, while his trial counsel might have learned that respondent was a suspect in the Shadden murder, had she executed these tasks, she would not have learned anything relevant, let alone exculpatory, to the charge of unlawful use of a weapon. Respondent nonetheless argues that because he was not reasonably informed of the consequences of accepting or rejecting the State's plea offer, he was denied effective assistance of counsel, rendering his plea involuntary and unknowing. Respondent cites People v. Correa, 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307 (1985), in support of his argument that he had a constitutional right to be reasonably informed of the consequences of accepting or rejecting the State's plea offer.
Courts are under no duty to admonish a defendant as to any collateral consequences of a guilty plea. See, e.g., People v. Murphy, 207 Ill.App.3d 539, 540-41, 152 Ill. Dec. 441, 565 N.E.2d 1359, 1360 (1991) (certification as an habitual child sex offender is a collateral consequence of a defendant's guilty plea to aggravated sexual assault and courts are under no duty, before accepting a guilty plea, to admonish a defendant that he becomes eligible for such certification as result of the plea) Although the Correa court noted that "[i]t is counsel's responsibility * * * to advise an accused of a collateral consequence of a plea of guilty" (emphasis added) (People v. Correa, 108 Ill.2d at 550, 92 Ill.Dec. 496, 485 N.E.2d at 310), we find that case distinguishable from the facts with which we are presented.
In Correa, counsel actively misrepresented the effect of the defendant's guilty plea on his immigration status and likelihood of deportation in response to defendant's specific request for advice on the issue. In finding that there was ineffective assistance of counsel, the court distinguished the situation there from the instance where counsel simply fails to advise the defendant of the collateral consequences of a guilty plea. Correa, 108 Ill.2d at 550, 92 Ill.Dec. 496, 485 N.E.2d at 311. As the Correa court noted:
"We need not here consider the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea, because in our case we have unequivocal, erroneous, misleading representations that were made to defendant in response to his specific inquiry, the accuracy of which counsel could have ascertained before the pleas were entered." Correa, 108 Ill.2d at 551-52, 92 Ill.Dec. 496, 485 N.E.2d at 311.
Here respondent did not receive erroneous advice in response to a specific question. In her affidavit, defense counsel stated that she "discussed with [respondent] the benefits and possible detriments of making an admission to * * * the charge of Unlawful Use of a Weapon." Counsel's affidavit did not state and respondent has not alleged that counsel gave him erroneous advice in response to a specific question concerning the use of his guilty plea in future trials for other offenses. Thus, Correa is inapplicable.
Subsequent to the Correa case, our supreme court addressed the situation where, similar to here, an attorney was not asked for advice by the client, but nevertheless failed to volunteer advice concerning the deportation consequences of a criminal conviction. People v. Huante, 143 Ill.2d 61, 156 Ill.Dec. 756, 571 N.E.2d 736 (1991). Applying the test pronounced in Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), to the facts of that case, the court concluded that the conduct of the defendant's trial counsel did not fall below an objective standard of reasonableness. People v. Huante, 143 Ill.2d at 71-72, 156 Ill.Dec. 756, 571 N.E.2d at 741. The same holds true here. Respondent has not cited any authority which requires an attorney to advise an accused client of the collateral consequence of a guilty plea being *180 used in future trials regarding any other possible criminal acts committed by the client. We conclude that counsel's performance here was not incompetent.
Respondent further contends that the court's denial of his motion to withdraw his guilty plea did not comport with the ends of justice. In support of this contention, he cites People v. Morreale, 412 Ill. 528, 107 N.E.2d 721 (1952). In Morreale, the prosecution requested of the court that the case be passed rather than continued, actively sought out and represented to defense counsel that the State would not oppose probation, and also stated that defendant "couldn't get hurt." Morreale, 412 Ill. at 530, 107 N.E.2d at 723. As a result of these representations during the hurried consultations, defendant pled guilty. Nevertheless, the court sentenced defendant to a term in the penitentiary.
The Morreale court noted that, in spite of the proper admonitions provided by the court, defendant misapprehended the consequences of his guilty plea based upon the plea bargaining procedures followed by the State. We find Morreale distinguishable for a number of reasons, but most importantly because the consequence of the guilty plea in that case was a direct consequence, as opposed to a collateral consequence with which we are concerned here.
It appears that this is a case of first impression in Illinois. Our independent research has disclosed cases from other jurisdictions, which have dealt with similar, although not identical, situations to that in the instant case. We find the reasoning of these persuasive.
In State v. Samuels, 253 N.J.Super. 335, 601 A.2d 784 (1991), defendant pled guilty to possession of a handgun found in his car during an arrest for a shooting incident. Shortly after he entered his plea, but before sentencing, additional charges were filed against him related to the shooting. Defendant moved to withdraw his guilty plea claiming that he would not have pled guilty had he known of the pending charges. The court noted that a defendant need only be informed of the penal consequences, not the collateral consequences, of his plea and also stated that "[t]he fact that a plea of guilty may hinder a defendant's ability to testify at a subsequent trial is a collateral consequence of the plea that does not justify a plea withdrawal." Samuels, 253 N.J.Super. at 344, 601 A.2d at 788. The court denied defendant's motion to withdraw his plea of guilty as he fully understood the nature and consequences of his guilty plea to possessing a handgun.
In United States v. Jordan, 870 F.2d 1310 (7th Cir.1989), cert. denied, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989), defendant pleaded guilty in state court to attempted murder. Six months prior to the entry of the plea agreement, and without notifying the defendant, the State's Attorney notified the Bureau of Alcohol, Tobacco, and Firearms (ATF) of defendant's arrest and record and informed them that, because defendant had been previously convicted of robbery three times, the ATF should consider prosecuting defendant for possession of a firearm by a career criminal. Consequently, a federal grand jury indicted him for that offense. Defendant moved to suppress evidence of his state guilty plea, contending it was unknowing and involuntary. The court did not and he was convicted.
In his appeal, defendant offered three arguments as to why the trial judge erred in not suppressing his state guilty plea including prosecutorial misconduct, that his plea was unknowing and involuntary due to his lack of knowledge about possible federal prosecution, and ineffective assistance of counsel for his counsel's failure to inform him of the possibility of federal prosecution. All three arguments were rejected by the court.
With respect to the claim of prosecutorial misconduct, the court stated that the State made no misrepresentation as to the possibility of federal prosecution because it made no representation at all. Furthermore, the State was under no affirmative duty to inform the defendant of all the possible ramifications of his plea.
Regarding his argument that his plea was unknowing and involuntary, the court noted that a defendant is entitled to know the direct, not collateral consequences, of his *181 plea. Because the federal prosecution was only a possibility, it was not a direct consequence, which the court defined as an immediate and automatic consequence, but rather was a collateral consequence, which the court defined as that which has no effect upon the length or nature of the sentence. Jordan, 870 F.2d at 1318.
Finally, the court rejected defendant's ineffective assistance of counsel claims where, unlike in the instant case, the record contained no evidence that his counsel failed to advise him. Nevertheless, the court noted that even if that could be shown, it was not clear that counsel's performance was incompetent since it was not a case where counsel actively misrepresented the collateral consequence of a plea. Jordan, 870 F.2d at 1319.
In King v. Dutton, 17 F.3d 151 (6th Cir. 1994), the court noted that:
"A conviction's possible enhancing effect on subsequent sentences has been held to be merely a collateral consequence of a guilty plea, about which a defendant need not be advised, even when there was a pending investigation into the charge upon which the subsequent sentence was based. United States v. Brownlie, 915 F.2d 527, 528 (9th Cir.1990); United States v. Edwards, 911 F.2d 1031, 1035 (5th Cir.1990) [And more relevant to the instant case,] [c]ourts also have held that a defendant need not be advised that a conviction based on a guilty plea can be used in a subsequent prosecution resulting from a pending investigation. See United States v. Campusano, 947 F.2d 1, 5 (1st Cir.1991); United States v. Jordan, 870 F.2d 1310, 1317-18 (7th Cir.), cert. denied, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989)." King v. Dutton, 17 F.3d at 153-54 (1994).
See also Adkins v. State, 911 S.W.2d 334, 350 (Tenn.Crim.App.1994)(failure of counsel to warn client of such collateral consequences, absent actively providing misadvice, does not fall below the range of competence demanded of attorneys in criminal cases); see also People v. Moore, 841 P.2d 320 (Colo.App.1992)(failure of trial court to warn a defendant of a guilty plea's possible effect on future criminal liability does not render the plea invalid).
Based upon the foregoing, we hold that the trial court did not abuse its discretion in denying respondent's motion to withdraw his plea of guilty to unlawful use of a weapon. We affirm the trial court's decision not to vacate its judgment and its finding of delinquency, adjudication of wardship and probation.
Affirmed.
BUCKLEY, P.J., and FROSSARD, J., concur.